## JOHNSON v. UNITED STATES.
### No. 7442.

United States Court of Appeals for the

District of Columbia.

Decided Feb. 28, 1940.

William H. Collins, of Washington, D. C., for appellant.

David A. Pine, U. S. Atty., and Arthur J. McLaughlin, Asst. U. S. Atty., both of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and EDGERTON and RUTLEDGE, Associate Justices.

EDGERTON, Associate Justice.

Appellant Johnson shot and killed George Scandalis on December 18, 1938. He was convicted of first degree murder and sentenced to death. He moved for a new trial on the ground, among others, of newly discovered evidence. The District Court overruled the motion.

Johnson, a colored laborer 22 years old, worked in a bakery. George Scandalis was his foreman. On December 17, 1938, Scandalis discharged Johnson. On December 18 Johnson returned to the plant, ostensibly to learn why he had been discharged. Scandalis, a strong man heavier than Johnson, seized him and put him out. Some 30 or 45 minutes later Johnson returned to the bakery and shot Scandalis. Eye-witnesses testified variously that Scandalis was retreating, standing still, and coming forward; but no one who testified at the trial, except appellant himself, saw anything menacing in the conduct or appearance of Scandalis. Johnson and Scandalis were said to be five or six, or eight, feet apart when Scandalis was shot. Appellant alone testified that "He was coming toward me to jump on me again." The court was scrupulously fair to appellant, and charged the jury on self-defense and on manslaughter, but the total lack of corroboration of appellant made his story hopeless. At the trial it appeared to be, as the court later said that it was, "evident that Scandalis' movement from the oven room had nothing to do with defendant."

Robert Thomas was an eye-witness of the shooting. He testified at the coroner's inquest, and was on the list of witnesses which the government furnished to appellant's counsel, but he was not called at the trial. The government tried without success to locate him. Presumably appellant's counsel assumed he would be produced. After conviction they got from Thomas an affidavit which stated that at the time of the shooting George Scandalis "was advancing toward Johnson in a menacing manner. * * * When George came to a point about three or four feet from Johnson he made a lunge for Johnson and a shot was fired." The court thereupon held a hearing and examined Thomas. It appeared at this hearing that appellant's counsel who drew the affidavit, and Thomas had misunderstood each other; for Thomas testified that Scandalis made his lunge after Johnson's first shot, though before his second. But Thomas insisted that Scandalis, before the shooting began, advanced toward Johnson "in a menacing manner." He testified that "Scandalis came from the oven room and started toward this boy Johnson, and I could see he was pretty

mad." He testified that Johnson had stopped, Scandalis was going toward him, and the men were only two or three feet apart, when the first shot was fired. The court asked Thomas what he meant by "a menacing manner," and he replied: "Well, the look on his face. I think he was still mad at the first encounter he had with Johnson." Thomas also testified that "he was putting him out, there's no doubt about it. * * * George started toward Johnson and I knew there was going to be trouble." At the end of the hearing the court said: "Whether it was a menacing manner depends on whether or not he was walking toward him in such a manner. He has described that George's actions did indicate that. * * * He went forward toward Johnson and walked up close to him and went right toward him, when the shot was fired." Thomas confirmed this paraphrase of his testimony.

■ The court found that this testimony, "instead of helping defendant, tends strongly to corroborate in a general way the testimony presented by the government at the trial." The court's action in overruling the motion for a new trial was plainly based, in part, on this finding. We think the finding and the consequent ruling were erroneous. If Thomas's testimony had been given at the trial it would have furnished substantial support, which without it was wholly lacking, for appellant's claim that he shot Scandalis because of fear induced by a fresh assault. It therefore called for a new trial.[1] The testimony, if believed, was calculated to raise in the minds of the jury a reasonable doubt whether appellant was guilty of murder in the first degree.

■ The government says that, even if this be conceded, Thomas's testimony was, in the exercise of due diligence, available to the defense at the trial and therefore ought not to be considered after conviction.[2] We think this does not follow. The experienced counselor who represents appellant here did not represent him at the trial. Accused was a colored boy without funds or other means to employ counsel of his own selection, and the court appointed two attorneys to defend him. The defense was conducted by one of them and another member of the bar. These attorneys did not examine the transcript of the testimony taken at the inquest. After the trial, they filed no brief in this court within the time allowed by the rules. The trial court finally asked present counsel to represent the defendant on this appeal. In the circumstances the failure of counsel to produce all available evidence, in a case involving the life of the accused, should not be held against him.[3] It would be a strange system of law which first assigned inexperienced or negligent counsel in a capital case and then made counsel's neglect a ground for refusing a new trial. The right to counsel is not formal, but substantial. It is hard to ask experienced counsel, of proved ability, to serve in cases of this sort without compensation; but the rights of poor persons can be protected in no other way until systematic provision is made for their defense.

Reversed and remanded for further proceedings consistent with this opinion.

[1] Mallard v. State, 174 Miss. 231, 164 So. 405; Taulbee v. State, 133 Tex.Cr. R. 530, 113 S.W.2d 182.

[2] Pauley v. Commonwealth, 151 Va. 510, 144 S.E. 361; McNally v. State, 129 Tex.Cr.R. 114, 83 S.W.2d 972; Fuller v. State, 213 Ind. 144, 10 N.E.2d 594;

Martin v. State, 189 Ark. 408, 72 S.W.2d 539.

The District Court did not act on this theory.

[3] Cf. Sanchez v. State, 199 Ind. 235, 157 N.E. 1; People v. Schulman, 299 Ill. 125, 132 N.E. 530, 24 A.L.R. 1022 (counsel employed by defendant).