Roosevelt **MITCHELL**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 14198.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 4, 1957.

Decided June 12, 1958.

Certiorari Denied Oct. 13, 1958.
See 79 S.Ct. 81.

Mr. Harold Leventhal, Washington, D. C. (appointed by this Court) for appellant.

Mr. E. Tillman Stirling, Asst. U. S. Atty., with whom Mr. Oliver Gasch, U. S. Atty., and Mr. Lewis Carroll, Asst. U. S. Atty., were on the brief, for appellee.

Before PRETTYMAN, FAHY and BURGER, Circuit Judges.

PRETTYMAN, Circuit Judge.

Mitchell was indicted, tried and convicted for carnal knowledge of a seven-year-old girl. He was sentenced on October 22, 1953. He was defended by counsel appointed by the District Court. On December 17, 1956, he filed a motion under Section 2255, Title 28, United States Code, to vacate his sentence. The District Court denied the motion without a hearing. It also denied leave to appeal without prepayment of costs. Petition for such an appeal was filed in this court and was allowed. Counsel was appointed. The cause is now before us upon the appeal from the denial of the Section 2255 motion.

The point made by Mitchell here is that he was without the effective assistance of counsel at his trial; that the representation by his court-appointed counsel was inadequate. He specifies that counsel failed to move for acquittal, failed to cross-examine, failed to object to hearsay evidence, and failed to object to a patently erroneous charge to the jury. His present counsel urges that Mitchell sufficiently alleged a denial of a constitutional right. He says the Sixth Amendment guarantees the *effective* assistance of counsel.

■ It is well established that the acts of counsel specified by Mitchell do not, in and of themselves, entitle him to relief under Section 2255. A judgment of conviction cannot successfully be attacked collaterally on such grounds, and a motion under Section 2255 is a collateral attack. Therefore, in order to get standing upon such a motion, Mitchell has bundled these alleged failures together and contends that, taken together and in sum total, they constitute ineffective assistance of counsel, violative of the Sixth Amendment and therefore raisable under a collateral motion. Similar motions and petitions have become so numerous, and the present one was so thoroughly and brilliantly presented to us, that we take occasion

to examine the problem and to state our views upon it in some detail.

We must first delimit our inquiry. We are not considering a case of alleged physical or mental disability on the part of counsel, or of intoxication, fraud or misrepresentation, dual interest, insufficient time for preparation, or inadequate notice. Such situations have special features. We are here concerned with allegations directed solely to the skill, the relative competence, of trial counsel in matters as to which counsel made decisions, or would have to make decisions, in the course of the trial.

The question before us is not the bare question of the right to counsel. Mitchell had counsel, and this lawyer was present and participating. We note that this lawyer was a well-known, experienced, and able member of our trial bar. Mitchell says he did not have the *effective* assistance of counsel; the assistance rendered him was not effective. What is meant by "effective assistance" in the application of the requirement of the Sixth Amendment for "the Assistance of Counsel for his defence"?

■ Of course, as a matter of literal semantics assistance is never effective unless it has the effect sought, that is, unless it is successful. If we were to ascribe that meaning to the term "effective assistance of counsel" in the representation of persons accused of crime, we would produce a rule which said that an alleged criminal is entitled, as a constitutional right, to counsel whose efforts are successful. We need not labor the point. "Effective" assistance of counsel obviously means something other than successful assistance.

A bit of history helps us here. The Constitution itself says nothing about "effective" assistance; it merely says "Assistance". The adjective "effective" came into the law in Powell v. State of Alabama[1] and was used by the Supreme Court to describe a procedural require-

1. 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932).

ment. In a particularly heinous crime the trial court appointed the whole bar of the county to defend. But what was everybody's business was nobody's business, and the Court used the word "effective" twice—regarding "an effective appointment" and an assignment at such a time or under such circumstances as to preclude "effective aid" in preparation and trial.

The Supreme Court has also discussed the matter and made rulings in respect to it in Von Moltke v. Gillies,[2] Glasser v. United States,[3] Johnson v. Zerbst,[4] Betts v. Brady,[5] Avery v. State of Alabama,[6] Ex parte Hawk,[7] White v. Ragen,[8] and Hawk v. Olson.[9] It is clear from these opinions that the term "effective" has been used by the Supreme Court to describe a procedural requirement, as contrasted with a standard of skill. The Court has never held that an accused is entitled to representation by a lawyer meeting a designated aptitude test. It has never used the term to refer to the quality of the service rendered by a lawyer. The Court has clearly established that an indigent accused is entitled to counsel, if he wants one, despite his inability to pay for the service; that appointed counsel must have reasonable opportunity to prepare for his task of defense; and that the lawyer so appointed must have no divergent interest. But the Court has not itself undertaken, nor has it imposed upon the inferior federal courts, the duty of appraising the quality of a defense.

The federal circuit courts of appeals have written many opinions in this field. Some of those cases are cited in the margin.[10] Through these opinions run some unanimous views. It has been repeated so many times as to become

2. 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948).

3. 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

4. 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

5. 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942).

6. 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1940).

7. 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572 (1944).

8. 324 U.S. 760, 65 S.Ct. 978, 89 L.Ed. 1848 (1945).

9. 326 U.S. 271, 66 S.Ct. 116, 90 L.Ed. 61 (1945).

10. United States v. Wight, 176 F.2d 376 (2 Cir., 1949), certiorari denied 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950); United States v. Mitchell, 138 F.2d 831 (2 Cir., 1943), certiorari denied 321 U.S. 794, 64 S.Ct. 785, 88 L.Ed. 1083 (1944); United States v. Handy, 203 F.2d 407 (3 Cir., 1953), certiorari denied 346 U.S. 865, 74 S.Ct. 103, 98 L.Ed. 375 (1953); United States v. Helwig, 159 F.2d 616 (3 Cir., 1947); Carvell v. United States, 173 F.2d 348 (4 Cir., 1949); Burkett v. Mayo, 173 F.2d 574 (5 Cir., 1949); Andrews v. Robertson, 145 F.2d 101 (5 Cir., 1944), certiorari denied 324 U.S. 874, 65 S.Ct. 1013, 89 L.Ed. 1427 (1945); Norman v. United States, 100 F.2d 905 (6 Cir., 1939), certiorari denied 306 U.S. 660, 59 S.Ct. 790, 83 L.Ed. 1057 (1939); Pelley v. United States, 214 F.2d 597 (7 Cir., 1954), certiorari denied 348 U.S. 915, 75 S.Ct. 296, 99 L.Ed. 718 (1955); United States v. Hack, 205 F.2d 723 (7 Cir., 1953), certiorari denied 346 U.S. 875, 74 S.Ct. 127, 98 L.Ed. 383 (1953); United States v. Ragen, 178 F.2d 379 (7 Cir., 1949), certiorari denied 339 U.S. 905, 70 S.Ct. 515, 94 L.Ed. 1334 (1950); United States v. Ragen, 176 F.2d 579 (7 Cir., 1949), petition for certiorari dismissed 338 U.S. 809, 70 S.Ct. 49, 94 L.Ed. 489 (1949); United States v. Ragen, 166 F.2d 976 (7 Cir., 1948); Sweet v. Howard, 155 F.2d 715 (7 Cir., 1946), leave to file petition for certiorari denied 336 U.S. 950, 69 S.Ct. 877, 93 L.Ed. 1105 (1949); Achtien v. Dowd, 117 F.2d 989 (7 Cir., 1941); Maye v. Pescor, 162 F.2d 641 (8 Cir., 1947); Conley v. Cox, 138 F.2d 786 (8 Cir., 1943); Hagan v. United States, 9 F.2d 562 (8 Cir., 1925); Mays v. United States, 216 F.2d 186 (10 Cir., 1954); Wheatley v. United States, 198 F.2d 325 (10 Cir., 1952); Moss v. Hunter, 167 F.2d 683 (10 Cir., 1948), certiorari denied 334 U.S. 860, 68 S.Ct. 1519, 92 L.Ed. 1780 (1948); Willis v. Hunter, 166 F.2d 721 (10 Cir., 1948), certiorari denied 334 U.S. 848, 68 S.Ct. 1499, 92 L.Ed. 1772 (1948); Thomas v. Hunter, 153 F.2d 834 (10 Cir., 1946); McDonald v. Hudspeth, 113 F.2d 984 (10 Cir., 1940) certiorari denied 311 U.S. 683, 61 S.Ct. 64, 85 L.Ed. 441 (1940).

axiomatic that convicted felons almost unanimously relish the prospect of putting to public judicial test the competence of their erstwhile defenders; that almost any judge or lawyer can point to potential mistakes in reviewing the record of a lost cause; and that even trial counsel, having lost, can almost invariably enumerate what in the hindsight of disaster appear to have been errors.

We find no case in which another federal court has gone as far in granting relief upon allegations of incompetence of counsel as we went in Jones v. Huff.[11] There it was alleged that counsel failed to object to a coerced confession, failed to subpoena known witnesses for the defense, failed to call a handwriting expert on a charge of forgery, and failed to offer a sample of handwriting although a juror requested it. We held that if counsel had in fact failed in all those respects the accused had not had a trial in any real sense. We adhere to the rule we there laid down. We think the term "effective assistance" in the constitutional sense cannot be expanded beyond the meaning given it in that case.

We find no case in which a federal court has granted a writ upon a plea that counsel was incompetent in his method or course in presenting the defense. Judge Denman of the Ninth Circuit, acting alone on a petition for a writ on allegations of incompetent and unprofessional counsel, ordered the release of the accused,[12] but his brethren of the full bench unanimously reversed.[13]

We in this court have examined the problem several times [14] before and after Jones v. Huff, supra. We have been consistent in our views upon the problem and adhere to them now.

The rule that matters open upon appeal cannot be raised collaterally rests upon a solid foundation; it is not a technicality. Justice must have order; it cannot exist in chaos. In fairness an accused is given an opportunity to present to a reviewing court his allegations of error upon his trial. But the essence of justice is the application of law to duly established facts. Normally, review must come while the matter is fresh, while witnesses, judges and lawyers are available, while memories are accurate. Hence the Rules of Procedure establish time limits for the taking of such a review. Those Rules have been adopted both by the Supreme Court and by the Congress. To permit a convicted person to wait months, or even years as is frequently the case, after the actors have gone and recollections cannot be refreshed, and then to secure review consideration of alleged errors open upon the normal processes of appeal, is to damage, if not destroy, an essential element in the rule of law, the element of accurate impartiality. Of course, and we emphasize it, if an accused has not had a trial, and a fair one in the jurisprudential sense of that word, the courts will supply a remedy. We do so upon occasion. But it is an extraordinary remedy. Courts ought not—must not—forget that our vaunted rule of law is a structure of rules; it is not an amorphous jelly of judicial pleasure. The rule of law is govern-

11. 80 U.S.App.D.C. 254, 152 F.2d 14 (1954).

12. McDonald v. Swope, 79 F.Supp. 30 (D.C.1948).

13. Swope v. McDonald, 173 F.2d 852 (1949), certiorari denied 337 U.S. 960, 69 S.Ct. 1522, 93 L.Ed. 1759 (1949).

14. E. g., Diggs v. Welch, 80 U.S.App.D.C. 5, 148 F.2d 667 (1945), certiorari denied 325 U.S. 889, 65 S.Ct. 1576, 89 L.Ed. 2002 (1945); Burton v. United States, 80 U.S.App.D.C. 208, 151 F.2d 17 (1945), certiorari denied 326 U.S. 789, 66 S.Ct. 473, 90 L.Ed. 479 (1946); Felton v. United States, 83 U.S.App.D.C. 277, 170 F.2d 153 (1948), certiorari denied 335 U.S. 831, 69 S.Ct. 18, 93 L.Ed. 385 (1948); Strong v. Huff, 80 U.S.App.D.C. 89, 148 F.2d 692 (1945), certiorari denied 326 U.S. 768, 66 S.Ct. 165, 90 L.Ed. 463 (1945); Johnson v. United States, 71 App.D.C. 400, 110 F.2d 562 (1940).

ment by rules properly adopted. The precise opposite of that prized system is a practice of disposing of each case without regard to rules and according to the individual and perhaps ephemeral pleasure—or opinion—of a judge. The rule that questions open upon appeal must be raised by appeal is a rule of law, and it is a sound and solid rule.

Much has been written in law journals on the subject of the assistance of counsel. Even a summary examination of the material would unduly prolong this discussion. Able articles appear in the U.C.L.A. Law Review,[15] the University of Chicago Law Review,[16] the Columbia Law Review,[17] and the Texas Law Review,[18] among others.

But, it is argued to us, all Mitchell now wants is a hearing on his petition and that surely he should have a hearing. There is the crux of the difficulty. What would the hearing concern? It would concern the professional competence of Mitchell's trial counsel. Mitchell, of course, if granted such a hearing, would have a right to put on evidence; he would endeavor to demonstrate his counsel was incompetent. The lawyer involved would have a right to put on evidence; he would try to show the competence of his advocacy. The issues would be those specified by Mitchell in his petition. The proceeding would be public, of course. The judge would decide whether the lawyer's conduct was ineffective or effective, incompetent or competent. Obviously such a proceeding, if permitted generally, would ensue upon almost every guilty verdict; almost every convicted person can think up several points in his trial where the course taken by his lawyer could have been different; and he has nothing to lose by a few extravagant claims.

Trial counsel must make many decisions of an almost infinite variety in the course of a criminal trial: whether to advise a plea to a lesser offense;

whether to object; whether to offer a witness of possibly doubtful credibility or with a criminal record; whether to risk crystallizing the view of the judge at that point by a motion for directed verdict before the defense testimony is in; whether to advise the defendant to take the stand and subject himself to cross examination; how to argue the case to the jury; whether to advise the defendant not to go to trial at all but rather to rely upon the mercy of the court. All these and more are practical questions and very real questions. Bad judgment, or even good but erroneous judgment, may result in adverse effects. These are simple facts of trial; they are not justiciable issues.

Common understanding among criminals has it, so we are told, that a smart lawyer can "walk his man out", guilty or not guilty. But such underworld romancing has no place in the serious consideration of any court. A lawyer, employed or appointed, is under obligation to defend with all his skill and energy, but he also has moral and ethical obligations to the court, embodied in the canons of ethics of the profession. Mere failure to achieve acquittal is no part of a court's consideration of the work of a trial lawyer. His obligation is to achieve a fair trial, not to see that his client is acquitted regardless of the merits.

There are a number of reasons why a hearing on a motion based upon alleged incompetence of counsel cannot be had unless the specifications of the motion are sufficient to indicate a lack of fair trial in the real sense of that abused term; moreover the specifications, even if impressive upon their face, must withstand initial checking for verity or, at the least, probability of verity.

In the first place the suggested process would disrupt the established function of trial judges. The trial of a case has different parts. The part of

---

15. Comment, 4 U.C.L.A.L.Rev. 400 (1957).

16. Comment, 17 U.Chi.L.Rev. 718 (1950).

17. Note, 47 Colum.L.Rev. 115 (1947).

18. Potts, Right to Counsel in Criminal Cases: Legal Aid or Public Defender, 28 Texas L.Rev. 491 (1950).

the lawyer is adversary advocacy. The part of the judge is to insure fairness, to speak upon the law, perhaps to find what the evidence proves. It is no part of the judge's function to evaluate the relative efficacy of trial tactics. If a trial judge were to understand that after the trial he would in all probability be called upon to determine whether each or any of the trial steps taken by the defense was or was not "ineffective", his whole attitude toward and conduct of the trial would change. We think this would destroy the concept of an impartial judge, a concept basic to our system.

If the trial judge were required, after a trial has been concluded, to judge the validity of the trial by appraising defense decisions, he would also be under an obligation to protect those rights of an accused as the trial progressed; in other words, from point to point throughout a trial the judge, under such a system, would be compelled to assure himself that the various tactical steps being taken by the defense were not "ineffective" or "incompetent". Any such procedure is, of course, impossible.

Moreover the constitutional right of an accused to the assistance of counsel might well be destroyed if counsel's selections upon tactical problems were supervised by a judge. The accused is entitled to the trial judgment of his counsel, not the tactical opinions of the judge. Surely a judge should not share the confidences shared by client and counsel. An accused bound to tactical decisions approved by a judge would not get the due process of law we have heretofore known. And how absurd it would be for a trial judge to opine that such-and-such a course was ineffective or incompetent because it persuaded him (the judge) to decide thus-and-so adversely to the accused.

And this brings to attention another feature of a court proceeding which contemplated a later adjudication of the competence of the defense. Defense counsel, having made an error in judg-

ment which rendered the defense demonstrably "ineffective", would necessarily be afforded an opportunity to correct his own error. He would surely be entitled to protect his client on the spot by trying another route. Every time counsel concluded he had made a mistake he would be entitled to a hearing on the point, and if he had indeed made an error a mistrial would be ordered. The impossibility of any such system seems clear enough.

Furthermore a retrospective evaluation of trial tactics is, generally speaking, impossible. Whether a certain course was "ineffective" or "incompetent" must be judged by the result, one would suppose. But in a vast majority of instances it is impossible to say that another course would have produced a different result.

Another imperative reason against permitting the procedure sought here is that it would destroy the representation of indigent criminals by the bar. No reputable member of the bar would, nor indeed should, undertake as a public duty the defense of an accused, if the courts were to permit the client thereafter to institute, by allegations as to trial tactics, a public inquiry into the professional competence of the lawyer. This would surely be the end of the lawyers' duty to accept assignments by the courts. One of the great protections of the unfortunate would be gone, destroyed not by the bar but by the courts.

We think the term "effective assistance"—the courts' construction of the constitutional requirement for the assistance of counsel—does not relate to the quality of the service rendered by a trial lawyer or to the decisions he makes in the normal course of a criminal case; except that, if his conduct is so incompetent as to deprive his client of a trial in any real sense—render the trial a mockery and a farce is one descriptive expression,—the accused must have another trial, or rather, more accurately, is still entitled to a trial.

A convicted person cannot bring about a judicial hearing upon and de-

termination of the trial competence of defense counsel by making allegations which, either on their face or after initial testing for verity, fail to indicate a lack of skill so great that the accused in realistic fact had not a fair trial. An accused cannot bring about a judicial evaluation of the quality of a defense; he is entitled only to allege and show that the proceeding was not a fair trial.

The statute rests the right to a hearing upon an examination of the motion and the records and files of the case. A motion which shows no ground for granting it conclusively shows it will be denied; conclusively shows no relief will be granted. This conclusion rests upon a simple elementary basis. If such a movant proved all the facts he alleges, he would get no relief; the conclusion flows as readily from the face of the allegations as from their proof. The necessity for the allegation of facts was pointed out by the Supreme Court in Walker v. Johnston.[19] It is not only a sound rule; it is a necessary one. The basic problem was before us in WJR, The Goodwill Station v. Federal Communications Comm.,[20] and the Supreme Court, reversing this court,[21] established the rule for that type of case. The rule is more definitely required in the type of motion now before us, as well appears from all we have said. If a movant under Section 2255 makes no allegations of ineffectiveness or incompetence of counsel, save in matters normally within the realm of counsel's judgment, he is not entitled to a hearing. Under such circumstances a hearing would be useless, an inexcusable waste of time, energy and money, because even if the movant proved what he alleged he would not be entitled to relief. The substantial considerations we have discussed forbid that a useless formality, fraught with serious consequences to the administration of law, be indulged to no purpose.

All of Mitchell's allegations fall well within the area of trial decisions. He says his counsel was incompetent because the child involved did not identify him on the witness stand. But her failure to do so was in his favor; certainly he would not have gained if she had identified him. Mitchell says the testimony of the mother and the grandmother was hearsay. But, if it was, its admission was a simple error of law and the point cannot be raised on a motion under Section 2255. As far as it bears on competence, objections to the testimony of the mother and grandmother of a seven-year-old child allegedly raped are well within the estimate of trial counsel in the atmosphere of the courtroom. This is a difficult decision; a correct answer to it one way or the other in different circumstances is of the very essence of skillful trial conduct.

What has been said about a hearing applies in this case in respect to the transcript. For purposes of the hearing *vel non* we assume that the transcript would prove what the petition recites as having occurred in the trial. Even upon that assumption no hearing was warranted. A transcript would show no more. We find no purpose to be served by furnishing free of charge a transcript. A transcript is not necessary to a decision upon the motion.

The order of the District Court is Affirmed.

FAHY, Circuit Judge (dissenting).

Perhaps the clearest way of expressing the reason for my dissent is to say that the constitutional right to the effective assistance of counsel does not in my view prescribe merely a procedural requirement but, contrary to the majority opinion, prescribes also a standard of skill. None of the decisions of the Supreme Court contains the limitation the

19. 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830 (1941).

20. 84 U.S.App.D.C. 1, 174 F.2d 226 (1948).

21. Federal Communications Comm. v. WJR, The Goodwill Station, 337 U.S. 265, 69 S.Ct. 1097, 93 L.Ed. 1353 (1949).

majority imposes. In the leading case of Powell v. State of Alabama, 287 U.S. 45, 58, 53 S.Ct. 55, 77 L.Ed. 158, it is said that the right of counsel is required in a "substantial sense." And see Jones v. Huff, 80 U.S.App.D.C. 254, 152 F.2d 14. Due process of law includes both procedural and substantive due process. So too, as it seems to me, does the right to the effective assistance of counsel extend through form to substance. "The right to counsel is not formal but substantial." Johnson v. United States, 71 App.D.C. 400, 401, 110 F.2d 562, 563. To dilute the right so as to eliminate consideration of competence in a particular case would at times leave only the shadow of one of our fundamental aids in the administration of justice.

True it is that to test by a standard of skill whether or not the right has been accorded raises problems; but should only a formal test prevail we would be faced with the even more serious problem of disposing of life and liberty in a manner inconsistent with the full content of a safeguard that has constitutional status.

We need not, I think, shape a rule on this subject through fear that inquiry in appropriate cases into counsel's conduct of a defense will significantly deter the acceptance by attorneys of court appointment to defend indigents:

> Undivided allegiance and faithful, devoted service to a client are prized traditions of the American lawyer. It is this kind of service for which the Sixth Amendment makes provision. And nowhere is this service deemed more honorable than in the case of appointment to represent an accused too poor to hire a lawyer * * *.

Mr. Justice Black, for himself and Mr. Justice Douglas, Mr. Justice Murphy and Mr. Justice Rutledge, in Von Moltke v. Gillies, 332 U.S. 708, 725–726, 68 S.Ct. 316, 92 L.Ed. 309.

The traditional amenities appropriate to the relationship between courts and members of the bar are not a substitute for inquiry in a particular case into the question whether a defendant has received assistance of counsel in terms of requisite skill. The bar is composed of professionals who have special responsibilities by reason of their calling. While the courts have the duty to defend them against unjust appraisal of their skill and judgment, I think the courts cannot bar inquiry into those matters when the substantial constitutional issue is raised.

Approaching the case in this manner the question is whether appellant is entitled to a hearing in the District Court under section 2255. That section provides that he is entitled to such a hearing,

> "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief * * *."

Do his section 2255 motion and the files and records conclusively show that appellant had the effective assistance of counsel? I assume that a bare allegation that he did not would not suffice to obtain a hearing. But appellant's allegation is not bare; it is clothed as it were with certain details. He alleges that counsel failed to move for acquittal, to cross-examine, or to object to hearsay evidence.

Let us consider this last allegation. In Pinkard v. United States, 99 U.S. App.D.C. 394, 240 F.2d 632, a case involving a similar crime, we held that the admission without objection of damaging hearsay evidence was reversible error. The attack on the conviction there, however, was by direct appeal, while the present attack is collateral and requires greater strength to succeed. It is not enough on collateral attack to show error; there must be shown a lack of reasonable skill in the conduct of the defense—a failure to meet in the particular case a fair standard of the professional competence incident to the professional right to defend a person on trial for crime.

If it should be shown in this case that the conviction rests in substantial de-

gree upon untrustworthy hearsay evidence not objected to, the courts might conclude in the light of this and all other circumstances of the trial, together with the omission of counsel to note an appeal, that there was not accorded to appellant his constitutional right to the assistance of counsel in his defense. On the other hand it might appear that his claim to that effect is wholly unjustified. All we can now say is what Circuit Judge Kalodner said for the Third Circuit in United States v. Stevens, 224 F.2d 866, 869, that the motion, files and records "far from showing conclusively that [appellant] is entitled to no relief, are not in any way informative on the issues raised * * *." We simply do not know.

A course open to the District Court would be to order a transcript of the trial. It might clearly appear from the transcript that appellant's allegations have no merit. If the matter should be left in doubt, however, the hearing and procedures envisaged by section 2255 should be accorded, and a decision made on the basis of the facts developed. Another course would be for the District Court to hold a section 2255 hearing without ordering a transcript. This might furnish a basis for a definitive decision. If not, a transcript could be ordered and findings and conclusions made on the basis of both hearing and transcript.

Embarrassment caused counsel by an unjust charge of ineffective assistance is a price that unfortunately must be paid at times for careful judicial administration. And where the charge is just the remedy is not to save counsel from embarrassment but to save his client from unjust conviction or sentence.

Whether or not the strict standard set forth in Diggs v. Welch, 80 U.S. App.D.C. 5, 148 F.2d 667, 669 for determining the absence of effective representation should be reconsidered by this court, as appellant's counsel urges, to the end that no longer should an accused be required to show that his trial was "a farce and a mockery of justice,"

the opinion in Diggs v. Welch seems to me to stand for the proposition that the quality and not merely the fact of representation must be considered even on collateral attack by habeas corpus, though the consideration there given was under the Fifth Amendment rather than the Sixth. This was before the enactment of section 2255, under which a less rigid showing is required now to obtain a hearing. I should think that on a motion under section 2255 justice need not be mocked in order to be dispensed, at least to the extent of granting a hearing.