Jerry CRUMP, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 20957.

United States Court of Appeals
Fifth Circuit.

March 31, 1964.

Jerry Crump, Montgomery, Ala., for appellant.

Macon L. Weaver, U. S. Atty., R. Macey Taylor, Asst. U. S. Atty., Birmingham, Ala., for appellee.

Before HUTCHESON and BELL, Circuit Judges, and BREWSTER, District Judge.

PER CURIAM.

This action was brought under 28 U.S.C.A. § 2255 seeking to vacate the appellant's federal court conviction and sentence on his plea of guilty to a two count indictment charging sales of narcotics in violation of 26 U.S.C.A. § 4705(a). The appellant's motion is grounded upon the allegation that he was denied effective representation by counsel.

The trial court held an evidentiary hearing, and denied the motion. Findings of fact and conclusions of law were filed with the order.

The appellant was represented by court appointed counsel in his narcotics cases. He says that the representation did not meet constitutional standards in two particulars: (1) His attorney should have advised him that he had the defense of entrapment. (2) The attorney had a conflict of interest on account of his representation of the co-defendant named in the indictment.

A short review of the facts will show that the trial court's findings of fact and conclusions of law adverse to appellant's contentions were fully supported by the record.

Before he was apprehended in these transactions, appellant was engaged in burglarizing drug stores and in selling the narcotics he obtained in the burglaries. He was serving a term in the Alabama state penitentiary on the burglary cases when he was brought to the federal court on a writ of *habeas corpus ad prosequendum* for arraignment and trial on the narcotics cases. It was his third trip to the state penitentiary, and he had a total of six state court felony convictions.

Prior to the arraignment of the appellant, the Court appointed a practicing attorney in Birmingham to represent him. He had had thirteen years experience in the general practice, with some of it in criminal cases in the federal courts. He was already representing the co-defendant, Ollie Ralph Brown, and had made a thorough investigation of the case. The Court first made inquiry to determine whether there was any conflict of interest in having the same lawyer represent both defendants, and confirmed the appointment after satisfying himself there was none. The record here supports the Court's decision.

The indictment against the appellant and Ollie Ralph Brown, returned on February 16, 1961, alleged that the first sale of narcotics was on October 3, 1960, and the other on October 7, 1960. The defendants pleaded guilty upon being arraigned on June 2, 1961, and at their request, the sentence hearing was set for a later date. On July 31, 1961, the appellant was given a five year general sentence on the two counts, not to run contence on the two counts, not to run concurrently with his other sentences.

Letters written by appellant during his arrest and before sentence and his affidavit filed in support of his motion to vacate show conclusively that he was well represented by an attorney who had no conflict of interest. Appellant has admitted his guilt from the beginning. He got off with a minimum sentence on two serious offenses, when he already had a record of three separate trips to the state penitentiary. His own letters plead for leniency for the co-defendant, a relative of his, by attempting to assume full responsibility for the wrongdoing.

The following is quoted from letters written by appellant to members of the United States Attorney's Office at Birmingham on October 11, 1960, October 31, 1960, and May 7, 1961:

"Mr. Longshore, if it could possibly be arranged by you, then I would like my case to be placed on the next consent docket. I want to enter a plea of guilty on the charges against me, and I would very much appreciate any consideration or leniency, which you and the presiding Judge might show in my case.

"Mr. Longshore, in the matter of Ollie Ralph Brown, arrested along with me, I would like to say that the narcotics seized by agent Barber, belonged solely to me! No part of them belonged to Mr. Brown whatsoever! Although O. R. Brown was in my presence, in both cases, when I negotiated a sale for the drugs, the drugs belonged to me. Mr. Brown wasn't an accomplice when

the Drugs were stolen from the Drugstores. I stole them myself.

"Mr. Longshore, I don't own an automobile nor does O. R. Brown. Yet Mr. Brown was in a position to obtain one from an Auto rental agency in Birmingham, I furnished the money with which the Automobile was rented and was paying Brown a small amount to drive for me, since I haven't licenses to drive and am not a very skillful Driver either. I don't think Brown fully realized the seriousness of what he was doing." (October 11, 1960.)

"Mr. Longshore, it is my desire to plead guilty on this charge; and to stand trial on this charge at the earliest possible date. I wrote you approximately 2½ weeks ago, asking to placed on the next consent docket. Somehow tho, my case wasn't tried this time. Mr. Longshore I would greatly appreciate anything you might do toward helping me to stand trial on the earliest possible date." (October 31, 1960.)

"Mr. Blynn: I am not asking for any specific mercy or consideration on my part, but yet would be deeply grateful for any which you and Mr. Longshore might show toward Ollie R. Brown. Until he began associating with me shortly prior to our arrest by Agent Barber, Ollie Brown had no criminal record, nor wasn't criminally inclined. In the space of a few weeks he is in prison and awaiting trial on a much seriouser charge.

"Mr. Blynn, had it not been for my influencing and persuasion, then I am positive Brown wouldn't be in the awful situation he is presently in. At the time of our arrest, Ollie Brown wasn't employed, couldn't seem to find employment and was financially despondent when he couldn't get a job to feed, clothe and support his wife and six minor children, five whom were school age! I'm not writing all of this out of my

feelings for Brown, but out of my sympathy for his wife and minor children who may suffer a lot of hardships if he is confined in Prison for a number of years. His wife and children are already under the care of the State Welfare Dept. and are receiving a $75.00 monthly welfare check which doesn't go far toward supporting a family of seven." (May 7, 1961.)

The appellant's letter to his own attorney written shortly before he was sentenced said:

"I expect to be convicted when I stand trial Mr. Longshore, but I sure would be grateful if you could possibly help me toward getting the minimum sentence of five years. I'm presently serving 11 years in Kilby and this will give me a total of 16 long hard years of state and federal sentences combined. If I am sentenced to 10 years on the charge, I will have 21 years altogether, and most of my life will have been utterly wasted in confinement. Mr. Longshore, this was my very first experience with narcotics, and was a badly blundered one; I don't have any previous arrests nor convictions on this charge, and this is the only hope for any leniency and mercy that I have. I hope it will just be taken in consideration at my trial." (July 10, 1961.)

Any summary or extensive quotations from appellant's nineteen page affidavit, written six months after his sentence and filed in support of his motion, would unduly lengthen this opinion. Suffice it to say that the facts set out in the affidavit show that he was guilty of the offenses on which he was sentenced, that the government could have proved his guilt, that he had no defense, and that he ought to be grateful for the efforts of his court-appointed counsel which got him off for the minimum penalty. They show that the appellant already had his first cache of narcotics obtained in his burglary of a drug store before his meeting and transaction with the informer that re-sulted in his arrest. He did not know the informer until he himself sensed his addiction and made the approach. The following quotation from appellant's affidavit shows that he was the one who actually made the first advance to the informer:

"This petitioner had in his possession a quantity of narcotics that were allegedly stolen during the course of a Burglary of the Glencoe Rexall Drug store at Glencoe, Alabama, in the early part of October, 1960. These self same narcotics were hidden in a wooded area near the town of Odenville, Alabama and were hidden by the petitioner in this cause. About one week after the burglary and the theft of the above mentioned narcotics, this petitioner chanced to meet a drug addict, a total stranger to this petitioner, in a downtown cafe in Birmingham.

From this petitioner's criminal past, he recognized this person to be a drug addict in the worst stages, who from his physical appearance, was very much sick and in need of a preparation of narcotics. Petitioner at this time concluded that the above described person was possibly an ex-convict, as was himself. The following conversation between the stranger and this petitioner, produced the following information: the stranger was truly a drug addict, was very sick and needing narcotics, had formerly been a patient in the U. S. Public Health Service Hospital at Lexington, Kentucky, several different times; was indeed an ex-convict having served time both in state and federal prisons, on violations of narcotic laws, and other offenses.

"The petitioner at this time became acquainted and friendly with this drug addict in the course of conversing with him, and drinking beer with him for about three hours in the Cafe. After about three hours of conversation, this petitioner divulged to the ex-convict, dope-

fiend that he had a quantity of narcotics hidden near Odenville, Alabama; further the petitioner in a state of sympathy for this wretched and sick drug addict, seeking to alleviate his terrible suffering for want of narcotics, took the addict into his confidence and took him to where the narcotics were hidden in the woods."

On page three of the "Traverse of Appellant Pursuant to the Brief and Argument on Behalf of the Appellee", signed by the appellant himself, it is said: " * * * As the issue of guilt, or of innocence is not controlling and material; appellant has made no claims of such, nor does he purport to be otherwise. Contrarily; and in complete agreement with appellee, appellant whole heartedly agrees that he is guilty of a crime within the meaning and defining of violation of Title 26 United States Code 4705(a)."

The appellant has sought to make some insinuation of infidelity from the fact that his lawyer was the son of the United States Attorney. We cannot imply without supporting facts that either one of them failed to live up to the standards of a profession which has long been noted for the fact that its members close to each other in personal life give their all for their clients, consistent with honor and legal ethics, when they meet as antagonists in the court room. The facts in this case completely repudiate the implication of any substandard level of professional service or any lack of loyalty to client. The record shows that appellant's attorney had considerable struggle on his hands to get a minimum sentence when the judge was indicating that he thought it ought to be more. It was plainly through counsel's extra work and effort that the appellant got off for less than his own letters indicated he thought he might receive. Counsel served the appellant without pay, and no lawyer could have done any more for him. We will not condemn that kind of representation solely on the basis of appellant's ingrati-

tude and of his charges having no foundation in fact.

There was no conflict of interest and no breach of legal duty on the part of appellant's counsel. There is not the slightest inkling that the trial of this case was a mockery or a farce. The trial court therefore correctly denied the appellant's motion. Kennedy v. United States, 5 Cir., 1958, 259 F.2d 883, cert. den. 359 U.S. 994, 79 S.Ct. 1126, 3 L. Ed.2d 982; Alexander v. United States, 5 Cir., 1961, 290 F.2d 252, 254, cert. den. 368 U.S. 891, 82 S.Ct. 144, 7 L.Ed.2d 89; Mitchell v. United States, 104 U.S.App. D.C. 57, 1958, 259 F.2d 787; Cofield v. United States, 9 Cir., 1959, 263 F.2d 686; Brest v. United States, 3 Cir., 1959, 266 F.2d 879, cert. den. 362 U.S. 912, 80 S. Ct. 662, 4 L.Ed.2d 619; Black v. United States, 9 Cir., 1959, 269 F.2d 38, cert. den. 361 U.S. 938, 80 S.Ct. 379, 4 L.Ed. 2d 357; Washington v. United States, 9 Cir., 1961, 297 F.2d 342.

The judgment is affirmed.