ALLEN, Chief Judge.
The State of Florida has appealed from an order vacating the judgment and sentence of the defendant-appellee and ordering a new trial. We reverse this order.
The defendant below pleaded guilty to a second degree murder charge on August 21, 1945. At his arraignment, he pleaded not guilty to a first degree murder charge. At trial, he changed his plea to guilty to a second degree charge. The judge sentenced him to life imprisonment.
The defendant-appellee filed his motion, based on Criminal Procedure Rule No. 1, F.S.A. ch. 924 Appendix, alleging that he was not represented by counsel at trial, August 21, 1945.
The minutes of the circuit court reflected that he was represented by counsel. The lower court, in its order granting a new trial found that the appellee was indicted for first degree murder July 18, 1945, and pleaded not guilty upon arraignment, July 31, 1945. The court found appellee to be indigent and appointed a prominent Tampa attorney to represent him. This attorney asked leave of court to have the prisoner withdraw the plea of not guilty to the first degree indictment and enter a plea of guilty to second degree murder. The presiding judge asked the appellee if this was his desire and if he realized he would be sentenced to a term in prison under the statute. The appellee responded in the affirmative and, as stated above, was later sentenced to life imprisonment.
Instead of basing his decision on the petition filed by the defendant-appellee, which was that he had no attorney, the circuit judge found from the factual situation that the prisoner could not have been properly represented because the appointed attorney had not had sufficient time to study the questions involved .and with which he was confronted. The court, in its order, said:
“Defendant’s Petition is based upon a claim he was not represented by counsel. The record reveals that competent counsel was appointed, but it is apparent that in the seventy minutes Court was in session on August 21, 1945, even such competent counsel could not obtain for nor accord to the indigent defendant due process as guaranteed by the duly recognized safeguards. In view of these facts, it is, therefore,
“CONSIDERED, ORDERED AND ADJUDGED by the Court:
“1. That the plea of guilty to the crime of Second Degree Murder, and the judgment and sentence of the Court pronounced and imposed on August 21, 1945, adjudging the above defendant guilty of the offense of Second Degree Murder and imposing sentence therefor, are hereby each severally vacated, annulled and set aside.” .
The circuit judge had previously stated in his order:
“These findings, of necessity, are determined from the court minutes and records rather than from testimony received from the defendant or other witnesses. The defendant is now in his *46 73rd year aind is- vague in his recollections. The Honorable * * * [attorney’s name] avers that after 19 years his memory as to details of the defendant’s trial is likewise vague. * * * [Attorney’s name] could only adhere to the facts as revealed by the Court’s records.”
Therefore, we do not here have a factual situation that the attorney, who represented the defendant-appellee through appointment by the trial judge, either improperly represented the appellee or that his judgment was wrong in accepting an offer of the State’s Attorney to reduce the charge from murder in the first degree where the defendant below could have received a death penalty verdict from the jury, to second degree murder where he received a life sentence. We instead have a judgment and sentence entered 20 years ago, carrying a presumption of correctness and which the appellee attempts to have vacated, because his petition alleged he had no attorney. This allegation is refuted by the record showing that he did have an attorney. No allegation was made that the attorney who represented him did not properly and competently represent him.
Neither is this a case where a trial judge had appointed an attorney to represent a prisoner and later granted a new trial because the attorney, in that judge’s eyes, did not and could not have properly represented the prisoner because he had not sufficient time to prepare for trial.
The facts in this case do not come within the orbit of the cases decided by the Florida Appellate Courts because there was no denial of a motion for a continuance and there was no trial. Brooks v. State, Fla.App.1965, 176 So.2d 116.
The minutes of the circuit court of Hills-borough County, August 21, 1945, reflect the following: First, a determination by Circuit Judge L. L. Parks that the defendant was insolvent, and that the court should appoint * * * [attorney’s name] as the attorney to represent the defendant. ' Thereafter the following appears:
“Thereupon * * * [attorney’s name] counsel for the defendant, asked and moved the Court that the defendant, Harvey Daniels, alias Olven Daniels, be allowed to withdraw his plea of not guilty heretofore entered in said cause and to plead guilty to murder in the Second Degree.
“The Court asked said defendant if he understood these proceedings at this time, if he understood that he was offering to plead guilty to murder in the Second Degree, and if he wanted to plead guilty to murder in the Second Degree in said cause, and the defendant answered in the affirmative.
“J. Rex Farrior, State Attorney, recommended that the Court accept said plea.
“Thereupon the Court proceeded to ' hear the evidence in said cause.
“After hearing all of the evidence, the Court granted the motion, and the defendant, Harvey Daniels * * * withdraws his plea of not guilty heretofore entered in said cause, and pleaded guilty to murder in the Second Degree, which plea was accepted by the Court.
“The Court ordered the defendant to stand and said defendant stood up.
“Harvey Daniels, * * * you have pleaded guilty to murder in the Second Degree which plea was accepted by the Court, and it is therefore ordered and adjudged by the Court that you be and stand convicted of murder in the Second Degree.
“The Court asked the defendant if he had anything to say why the sentence of the law should not be passed upon him, and the defendant said, ‘Have mercy on me.’
“It is the sentence of the law and the judgment of the Court that you, Har *47 vey Daniels, * * * be taken by the Sheriff or his lawful Deputy to the State Prison of the State of Florida, and delivered to the principal keeper thereof, and there to be confined in said State’s Prison at hard labor for the remainder of your natural life from the date of your incarceration therein.”
It will be observed from the minutes above set forth that the circuit judge heard the testimony in the first degree murder indictment before he permitted the defendant to change his plea of not guilty to guilty of murder in the second degree.
A hard and fast rule that any prisoner could be released from prison on his allegation that he had no counsel, where the facts showed that he had pleaded not guilty to first degree murder upon arraignment and at trial was appointed adequate counsel who advised him to plead guilty to second degree murder, would subject our courts with numerous petitions for new trial. To abstractly hold that the length of time between which counsel is appointed and client pleads guilty is too short to allow counsel to become acquainted with the factual and legal issues of the case, smothers the realities and practicalities of this case. Here the attorney adjudged that it was in his client’s best interests to plead guilty to second degree murder and be sentenced to life imprisonment rather than plead not guilty to first degree murder, go to trial, and risk a death penalty verdict. It is impossible for us -to conclude from the factual situation that counsel improperly advised his client to change his plea.
It is probable that if the defendant should go back for trial at the present time, some 20 years after the crime for which he was charged took place, he might not even be convicted, through death of witnesses or failure of witnesses to remember what actually took place; but there is also a possibility that this prisoner would be tried on the first degree murder charge today and receive the death penalty. The lower court indicated to him that he would be tried on the first degree charge.
We note from the transcript of the testimony taken on the .Rule No. 1 hearing in this case that an attorney had been hired by the defendant’s brother-in-law, but that his brother-in-law took his money. back from this attorney. The record from the hearing shows the following testimony by the ap-pellee on direct examination:
“Q But then he took the money down? What do you mean by that?
“A I don’t know. I guess the people told him that I couldn’t win. They said they were going to electrocute me. I guess he didn’t want to lose the money on me. He just come and got his money; told the lawyer he wouldn’t go any further with it, I reckon.
******
“Q Did the state attorney ever indicate to you or tell you that he was going to have you electrocuted?
“A He said I could get electrocuted if the judge didn’t recommend mercy.
“Q And then he offered to let you plead to second degree murder?
“A Second degree murder. He said he’d drop it to second degree murder but, if I didn’t plead, he’d hold it to first degree.
“Q Where did that conversation take place? Was it in the county jail?
“A I was in jail.
# :{: * if * if
“Q After you had seen that lawyer one time, did you ever talk to another lawyer ?
“A Never did. ■
“Q Now, do you recall being in the Court House before Judge Parks? *48 Do you remember Judge Parks, the judge that sentenced you?
“A I wouldn’t know him now, I don’t reckon. I didn’t know his name. I didn’t even know the judge’s name. I didn’t have my papers.
“Q Didn’t you talk to a lawyer there in the court room that day?
“A Not as I know of. I couldn’t recall. I don’t remember talking— I never talked to the first one what my brother-in-law got me. He just told me he was there to represent me. ■ That’s all he said to me.
“Q' That was the first lawyer ?
■ “A Yes. Well, there ain’t been no second one.
“Q But you don’t remember, or do you remember talking to * * * [attorney’s name] ?
“A No sir.
“Q' (Continuing) The lawyer?
“A No sir. If I did, he didn’t tell me he was a lawyer.
******
“Q But, is it your testimony that you never did talk to another lawyer—
“A (Interrupting) No sir.
“Q (Continuing) after the first time you talked to Mr. * * * ?
“A Never did.
“Q (Continuing) And entered a plea of not guilty.
“A Just one lawyer is all I remember about. My brother-in-law had gotten him and he got off of my case.
“Q Now, is it that you just don’t remember talking to another lawyer ?
“A; I didn’t talk with nairn.”
The defendant then proceeded to state he did not remember being told by the judge that he was entitled to have a lawyer; that nothing was said about a lawyer. It is easy for us to understand the defendant’s lack of memory since it has been over 20 years since this occasion and the prisoner is now some 73 years of age or over.
The defendant further testified:
“Q Did the judge hear the testimony of the witnesses in your presence ?
“A Yes. I don’t remember but one fellow that got up there to testify. I remember him. That’s the only one I remember; no more. I. didn’t see them because they wouldn’t come up there. And the . state solicitor sat him down;, said, ‘You go over there and sit down.’ He told him that he was standing right side of ■ me when I shot him five times. He said, ‘You mean to stand here and tell me that you was standing beside that man when Harvey shot him him five times?’ He said — his mouth was open. He was sitting over there, and that was all.”
The defendant continued through the hearing to deny that he had an attorney representing him after the hearing on the case started, although he remembered the first attorney that his brother-in-law secured for him, because that lawyer told him that he was his lawyer. The records show that the attorney secured bj-- his brother-in-law represented him at the time of the arraignment.
Subsequently, the minutes of the court were read showing that the defendant, at the time of arraignment, was represented by two well known Tampa attorneys, and that subsequently the minutes showed that after the insolvency of the defendant was determined that the circuit judge appointed another prominent -Tampa attorney to represent defendant in this case, and that he *49 •was present at the time that the defendant was tried.
The attorney appointed to represent the defendant at the time of trial had served as an Assistant County Solicitor of Hills-borough County. He stated he had handled the majority of the criminal cases taken in the Criminal Court of Record of Hills-borough County during the time he served there.
As we have stated before, some 20 years have passed since the representation of the defendant by the attorney appointed by the court. This attorney, in his testimony in the instant case, stated:
“ * * * I know that I wasn’t appointed by his Honor to represent this man and walked right up before the court and said, ‘We’ve changed the plea • from not guilty to guilty,’ and entered a plea. I know that that didn’t happen. But, insofar as — I know that, from knowing my representation of clients and my responsibility to clients, as far as to the length of time that could have expired — this is what I’m saying of it, what could have happened another day. I know, in other words, that as far as my representation of this man, I certainly, naturally, would not have gone in without having proper conversations or conferences with the man. Now, whether the date of my appointment is correct, that, I don’t know.”
At the conclusion of the hearing on the Rule No. 1 petition, the minutes of the court reflect the following:
“THE COURT: I am not considering competency of counsel at all. I’ll rule at this time, if you want the ruling there, that, so far as the caliber of his counsel is concerned, it was excellent. I’m saying that the period of time is what enters into it, the period of time in which all of this transpired.
******
“I don’t think there is any question of the competency of counsel either at the arraignment or at the time the plea was received. It is the question in my mind of the period of time which, by the record, would indicate that counsel regardless of competency — and it was high — had to operate in. * * * ”
Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), one of the Scottsborough rape cases, holding that the right to counsel carries with it the assistance of counsel before trial, as well as during the trial itself, is distinguishable from this case. There the trial from beginning to end proceeded in a tense, hostile and excited atmosphere of public sentiment. The lack of specific appointment of counsel made representation of the defendants a sham and a farce. The trial judge appointed all the members of the local bar for the defense, and one attorney from Chattanooga, Tennessee, appeared at the request of outside interests. A substantial obligation to defend fell on no attorney. This confused and lack of specific representation was borne out by the fact that a leading member of the local bar accepted active employment on the side of the prosecution. We think the Court properly held that this was not effective assistance of counsel.
In Simpson v. State, Fla.App.1964, 164 So.2d 224, the Third District Court of Appeal held that a prisoner was not entitled to . relief on the theory that he was denied his constitutional right tó counsel through incompetence of his court-appointed counsel, in view of the fact that the allegations in prisoner’s motion in regard to the failure to take specific action with regard to the alleged murder weapon; and in regard to the failure of the attorney to confer, and in regard to the failure to take specific action with regard to the alleged murder weapon, and in regard to the failure to expose the character of the murder victim, did not constitute a sufficient showing that the appointed counsel was so incompetent as to render prisoner’s trial a mockery or farcical.
*50 Judge Hendry, speaking for the court, said:
“Now that we have discovered what would amount to a deprivation of counsel by means of incompetence we must consider what specific activity on the part of a lawyer would result in a trial becoming a ‘mockery or farcical’ so that such an allegation, if proven, would constitute grounds for granting a new trial.
“In Mitchell v. United States, 104 U.S.App.D.C. 57, 259 F.2d 787, 794 (1958), cert. den. 358 U.S. 850, 79 S.Ct. 81, 3 L.Ed.2d 86, Judge Prettyman writing for the court, stated:
“‘If a movant under Section 2255 makes no allegations of ineffectiveness or incompetence of counsel, save in matters normally within the realm of counsel’s judgment, he is not entitled to a hearing. Under such circumstances a hearing would be useless, an inexcusable waste of time, energy and money, because even if the movant proved what he alleged he would not be entitled to relief.’
“In regard to what constitutes ‘judgment’ the court said:
“ ‘Trial counsel must make many decisions o,f an almost infinite variety in the course of a criminal trial: whether to advise a plea to a lesser . offense; whether to object; whether to offer a witness of possibly doubtful credibility or with a criminal record ; whether to risk crystallizing the view of the judge at that point by a motion for directed verdict before the defense testimony is in; whether to advise the defendant to take the stand and subject himself to- cross examination; how to argue the case to the jury; whether to advise the defendant not to go to trial at all but rather to rely upon the mercy of the court. All of these and more are practical questions and very real questions. Bad judgment, or even good but erroneous judgment, may result in adverse effects. These are simple facts of trial; they are not justiciable issues.’ 259 F.2d at 792.
■ * * * * * *
“ * * * The procedure to be followed by the trial court in these situations where the defendant raises incompetency of counsel is the same as in all of the other Rule 1 proceedings.
“The court must first review the motion, with the allegations contained therein. If the movant has failed to allege facts which if proven would establish that his incompetent counsel •resulted in a trial which was a farce and mockery then the motion may be dismissed.
“If the prisoner alleges facts which if proven would establish his conviction was obtained by virtue of a farcical trial because of counsel, then the court must review the record to determine if these factual allegations could be rebutted. If the record clearly rebuts the allegations raised by the prisoner relief will be denied.”
In Goforth v. United States, 314 F.2d 868 (10th Cir.1963), which was a proceeding on a motion attacking the sentence on the ground the defendant had been denied effective assistance of counsel, the Court of Appeals held that the failure to appoint counsel until a few minutes before commencement of the trial did not result in denial of accused’s constitutional right to effective assistance of counsel where accused, by failing to apprise the court of his inability to retain private counsel, had allowed the trial date to arrive without obtaining counsel and where the appointed attorney took an active and effective part in. the trial.
*51 The Court said:
"Our consideration of this case could stop at this point. Nevertheless, we have carefully and thoroughly examined the transcript of the trial proceeding and all other proceedings in the case. From such examination, we are unwilling to conclude that the services of Goforth’s attorney were of a substandard level such as would make the trial become a mockery and farcical. The trial record shows active and effective participation in the trial by the appointed counsel. By his alertness and timely objections the record was kept free from incompetent and objectionable evidence, the right of cross-examination was exercised wisely and counsel’s examination of Goforth, who took the stand, appears to have clearly presented his defense. There is abundant, if not overwhelming, evidence to support Goforth’s conviction and nothing to indicate that his rights were prejudiced by the appointment of counsel just prior to the trial. Certainly, the better practice is to appoint counsel sufficiently far in advance so that he may have ample time to prepare for trial but the circumstances in this case do not establish that Goforth suffered any prejudice.”
We hold, under the factual situation in this case, where the defendant did not complain in his motion of the incompetency of his court-appointed counsel, whether the action of the attorney was one of judgment that the prisoner should change his plea of not guilty to first degree murder to guilty of second degree murder and neither the record nor the testimony indicated that this change was to the prisoner’s prejudice, that the lower court committed error in granting a new trial.
Reversed for further proceedings, not inconsistent with this opinion.
SHANNON and LILES, JJ., concur.