## STATE OF TENNESSEE ex rel. IRA LEIGHTON, Plaintiff in Error, v. C. MURRAY HENDERSON, Warden, Defendant in Error.

Court of Criminal Appeals of Tennessee. July 16, 1969.

Certiorari Denied by Supreme Court Dec. 1, 1969.

Lloyd Comer, Lawrenceburg, for plaintiff in error.

George F. McCanless, Atty. Gen., C. Hayes Cooney, Asst. Atty. Gen., Nashville, M. A. Peebles, Dist. Atty. Gen., Columbia, for defendant in error.

## OPINION

OLIVER, Judge.

Ira Leighton, the plaintiff in error and petitioner below, appeals to this Court from the judgment of the Cir-

cuit Court of Lawrence County which dismissed his petition for the writ of habeas corpus following an evidentiary hearing. After an earlier judgment entered by the Lawrence County Circuit Judge was reversed and remanded by the Supreme Court of Tennessee, the Chief Justice designated Honorable J. Fred Bibb, retired Criminal Judge, to re-try the cause and it is from his judgment that the petitioner now appeals.

Following the knife slaying of the Sheriff of Lawrence County on January 12, 1943 when the Sheriff entered the petitioner's cell in the County Jail, he was indicted therefor on January 14, 1943, counsel was appointed by the court to represent him on the same day, and he was brought to trial on February 1, 1943. Culminating a trial lasting four days, the petitioner was convicted of first degree murder and was sentenced to imprisonment for ninety-nine years in the State Penitentiary and is now serving that sentence. That judgment of the trial court was affirmed by the Supreme Court of this State in an opinion filed January 8, 1944.

Twenty-three years after his conviction, the petitioner filed his petition for the writ of habeas corpus on January 31, 1966 and was subsequently permitted by the trial court to file an amendment thereto. In this petition, as amended, he attacks his conviction on the grounds (1) that he was never taken before a committing magistrate, (2) that he was not accorded a preliminary hearing, (3) that his court-appointed attorney was incompetent and did not diligently try to protect his right to a fair trial, and that he was denied effective representation by counsel, (4) the trial judge refused to grant his motion for a change of venue, (5) that following the killing

he was taken the same night to the Davidson County Jail for safekeeping and remained there until the day before his trial, and he was denied opportunity to advise with his court-appointed counsel who did not have adequate time to prepare for his trial, and (6) the evidence did not sustain his conviction for first degree murder.

The essential substance of the petitioner's two Assignments of Error is that the evidence in this record preponderates against the judgment dismissing his petition. In considering this contention, we are bound to adhere to the unquestionably settled rule that the findings of the trial court, upon questions of fact, are conclusive unless this Court finds that the evidence preponderates against the lower court's judgment. State ex rel. Lawrence v. Henderson (Tenn.Crim.App.), 433 S.W. 2d 96, and cases there cited.

The purpose and function of the writ of habeas corpus is "to obtain immediate relief from illegal confinement; to liberate those who may be imprisoned without sufficient cause; and to deliver them from unlawful custody." State ex rel. Brown v. Newell, 216 Tenn. 284, 391 S.W.2d 667. It is to correct the denial of fundamental constitutional rights, to strike down a judgment which is constitutionally void and not merely voidable. State ex rel. Newsom v. Henderson, 221 Tenn. 24, 424 S.W.2d 186. The object of this ancient writ is to obtain immediate release from illegal restraint or confinement, and it is available only when the judgment assailed is constitutionally void, or when the term of imprisonment has expired. State ex rel. Dickins v. Bomar, 214 Tenn. 493, 381 S.W.2d 287.

The record in this case consists of (1) the entire record of the petitioner's original trial and appeal, including appellate briefs and the Supreme Court's opinion affirming the conviction, filed as an exhibit to the respondent's answer; (2) the entire record of the first trial upon this habeas corpus petition, including the appeal therein, the parties stipulating that the evidence introduced in that hearing, as preserved in the Bill of Exceptions thereof, should be treated and considered as proof properly and regularly presented at the instant hearing; and (3) the oral testimony in this last hearing.

The contention that the petitioner was not taken before a committing magistrate contradicts his own testimony at the original trial that he was committed to jail by a magistrate earlier on the night of the killing, as a result of his earlier arrest following a fight he had been involved in. It does appear that the magistrate's order of commitment was made verbally and without the formal issuance of a mittimus or other written authority. But this fact could have no bearing whatever in his prosecution for killing the Sheriff in his jail cell. The same issue was raised in appealing from his conviction. Finding that he was taken before the magistrate, the Supreme Court said: "It is stressed that he was placed in the jail on the order of the magistrate before the formal issuance of the usual written authority, but, as we read the record, this has no material bearing upon the question of the guilt or innocence of the defendant for the crime of which he was convicted." It was thus adjudicated that the petitioner was not in any wise prejudiced by the manner by which he was committed to jail.

But even if he were not taken before a com-

mitting magistrate immediately, that circumstance alone did not trench upon his constitutional rights. In State ex rel. Reed v. Heer, 218 Tenn. 338, 403 S.W.2d 310, the Court said upon this subject:

"Petitioner first contends that he was not immediately taken before a committing magistrate after his arrest, as required by T.C.A. § 40-1101. This statute does not require that a prisoner be taken immediately before a committing magistrate, but merely prescribes what shall take place at the time the prisoner is taken before the magistrate.

"T.C.A. sec. 40-604 states that 'no person can be committed to prison for any criminal matter, until examination thereof be first had before some magistrate.' This section does not prohibit the holding of an accused for questioning before taking him to a committing magistrate or before arraignment. Hardin v. State, 210 Tenn. 116, 355 S.W.2d 105, 356 S.W.2d 595 (1962); VanZandt v. State, 218 Tenn. 187, 402 S.W.2d 130, decided March 2, 1966. A holding of two days, nothing else appearing, does not violate constitutional due process or sec. 40-604. Dupes v. State, 209 Tenn. 506, 354 S.W.2d 453 (1962); East v. State, 197 Tenn. 644, 277 S.W.2d 361 (1955). We find no denial of constitutional due process in this allegation or in the proof offered in support of it."

■ The petitioner's complaint that he was not accorded a preliminary hearing does not present any constitutional infirmity in his presecution and trial. There is no constitutional mandate requiring a preliminary hearing in this State, and an accused has no constitu-

tional right to a preliminary hearing. State ex rel. Reed v. Heer, supra; State ex rel. Carlson v. State, 219 Tenn. 80, 407 S.W.2d 165; Kimbro v. Heer (6th Cir. 1966), 364 F.2d 116; Dillard v. Bomar (6th Cir. 1965), 342 F.2d 789, cert. den. 382 U.S. 883, 86 S.Ct. 176, 15 L.Ed.2d 123; Green v. Bomar (6th Cir. 1964), 329 F.2d 796.

Equally untenable are the petitioner's contentions of ineffective representation by his court-appointed counsel, and that his counsel did not have sufficient time for adequate trial preparation because the trial was held too soon. As already stated, the killing occurred on the night of January 12, 1943; shortly thereafter the petitioner was taken to the Davidson County Jail in Nashville for safekeeping where he remained until one or two days before his trial began on February 1, 1943; the indictment was returned on January 14, 1943 and on the same day the court appointed counsel to represent the petitioner who was the only living eyewitness to the killing with which he was charged. This attorney went to Nashville to interview the petitioner and later took a written statement from him, and talked to him again after his return to the Lawrence County Jail, albeit in the presence of an officer; promptly after his appointment, the attorney filed and prosecuted a motion for a change of venue, at the hearing of which witnesses were presented and arguments were made on both sides; he represented the petitioner in a four-day trial, the record of which demonstrates that he well understood the case and conducted a vigorous and aggressive defense; the petitioner testified as a witness in his own behalf, and admitted that his counsel had attempted to investigate

everything pertaining to the case; after the trial this attorney carefully prepared and argued a motion for a new trial containing twenty-four specifications of error; when the motion for a new trial was overruled, the attorney made a motion in arrest of judgment which was overruled also, and he then prayed and was granted and perfected an appeal to the Supreme Court of Tennessee; he then procured the preparation of and personally paid for the Bill of Exceptions; he filed in the Supreme Court a Brief and twenty-six Assignments of Error including the refusal of the trial court to grant a change of venue, and rulings on the admissibility of evidence during the trial, the sufficiency of the evidence to sustain the verdict, the action of the court in overruling the motion for a new trial and the motion in arrest of judgment, and various other alleged errors. This attorney, now deceased, had been practicing law forty-five years and had an extensive criminal practice and was known as a capable attorney and trial lawyer.

The record does not support the charge that this court-appointed attorney ineffectively represented the petitioner, nor that he was prevented by lack of time from making adequate trial preparation. In its opinion affirming the petitioner's conviction, the Supreme Court of Tennessee characterized this attorney as "diligent counsel."

An excellent exposition of the law applicable to charges of inadequate legal representation in criminal cases is stated in Schaber v. Maxwell, 348 F.2d 664 (6th Cir. 1965):

"In Scott v. United States, 334 F.2d 72, 73 (C.A. 6),

cert. denied, 379 U.S. 842, 85 S.Ct. 81, 13 L.Ed.2d 48, this court stated the general rule as follows:

"Only if it can be said that what was or was not done by the defendant's attorney for his client made the proceedings a farce and a mockery of justice, shocking the conscience of the Court, can a charge of inadequate legal representation prevail. The fact that a different or better result may have been obtained by a different lawyer does not mean that the defendant has not had the effective assistance of counsel. Mitchell v. United States, 104 U.S.App. D.C. 57, 259 F.2d 787, 789-791, cert. denied, 358 U.S. 850, 79 S.Ct. 81, 3 L.Ed.2d 86; O'Malley v. United States, 285 F.2d 733, C.A. 6th; Anderson v. Bannan, 250 F.2d 654, C.A. 6th.'

\* \* \* \* \* \*

"Frequently courts have drawn distinction between cases involving court-appointed counsel and counsel employed by the defendant, his family or friends, saying in the latter case the ground of incompetency cannot be raised unless the defendent makes known his disapproval of the actions of his counsel. Annotation, 74 A.L.R.2d 1390; note, 78 Harvard Law Review 1434; but see Lunce v. Overlade, 244 F.2d 108, 74 A.L.R.2d 1384 (C.A. 7), United States ex rel. Darcy v. Handy, 203 F.2d 407 (C.A. 3). In the present case we are not concerned with this distinction, because petitioner's attorneys were appointed.

"Recognition of the constitutional right of a defendant to effective counsel stems from Powell v. State of Alabama, 287 U.S. 45, 71, 53 S.Ct. 55, 77 L.Ed. 158,

wherein the Court spoke of giving 'effective aid in the preparatian and trial of the case.' In later cases the Supreme Court has reiterated the constitutional right to effective representation by counsel. In Avery v. State of Alabama, 308 U.S. 444, 446, 60 S.Ct. 321, 84 L.Ed. 377, the Court stated that the guarantee of the Fourteenth Amendment is not satisfied by a mere formal appointment of competent counsel and that a denial of opportunity to confer, consult with the accused and to prepare his defenses, could convert the appointment into a 'sham.' In Glasser v. United States, 315 U.S. 60, 76, 62 S.Ct. 457, 468, 86 L.Ed. 680, it was held that the defendant was denied 'his right to have the effective assistance of counsel,' because of conflict of interest. In White v. Ragen, 324 U.S. 760, 764, 65 S.Ct. 978, 980, 89 L.Ed. 1348, the Court said '[I]t is a denial of the accused's constitutional right to a fair trial to force him to trial with such expedition as to deprive him of the effective aid and assistance of counsel.' In Hawk v. Olson, 326 U.S. 271, 276, 66 S.Ct. 116, 90 L.Ed. 61, the Court said that it was a violation of the Fourteenth Amendment for a state to force defendant to trial in such a way as to deprive him of the effective assistance of counsel. In Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83, while ruling against petitioner, the Court left little doubt that in a proper case evidence of incompetence of counsel could be grounds for dismissal of conviction. In Ellis v. United States, 356 U.S. 674, 675, 78 S.Ct. 974, 2 L.Ed.2d 1060, it was held that representation in the role of an advocate, rather than that of amicus curiae, is required.

"As said by Judge Prettyman in Mitchell v. United States, 259 F.2d 787 (C.A.D.C.), cert. denied, 358 U.S. 850, 79 S.Ct. 81, 3 L.Ed.2d 86:

' "Effective" assistance of counsel obviously means something other than successful assistance.

'A bit of history helps us here. The Constitution itself says nothing about "effective" assistance; it merely says "Assistance." The adjective "effective" came into the law in Powell v. State of Alabama and was used by the Supreme Court to describe a procedural requirement. In a particularly heinous crime the trial court appointed the whole bar of the county to defend. But what was everybody's business was nobody's business, and the Court used the word "effective" twice—regarding "an effective appointment" and an assignment at such a time or under such circumstances as to preclude "effective aid" in preparation and trial.

'* * * It is clear from these opinions that the term "effective" has been used by the Supreme Court to describe a procedural requirement, as contrasted with a standard of skill. The Court has never held that an accused is entitled to representation by a lawyer meeting a designated aptitude test. It has never used the term to refer to the quality of the service rendered by a lawyer. The Court has clearly established that an indigent accused is entitled to counsel, if he wants one, despite his inability to pay for the service; that appointed counsel must have reasonable opportunity to prepare for his task of defense; and that the lawyer so appointed must

have no divergent interest. But the Court has not itself undertaken, nor has it imposed upon the inferior federal courts, the duty of appraising the quality of a defense.' 259 F.2d at 789-790

\* \* \* \* \* \*

'We think the term "effective assistance"—the courts' construction of the constitutional requirement for the assistance of counsel—does not relate to the quality of the service rendered by a trial lawyer or to the decisions he makes in the normal course of a criminal case; except that, if his conduct is so incompetent as to deprive his client of a trial in any real sense—render the trial a mockery and a farce is one descriptive expression, —the accused must have another trial, or rather, more accurately, is still entitled to a trial.' 259 F.2d at 793.

"In this opinion Judge Prettyman cites many other cases dealing with the problem of the effective assistance of counsel.

"In MacKenna v. Ellis, 280 F.2d 592, 599 (C.A. 5), cert. denied, 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78, the court stated:

'We interpret the right to counsel as the right to effective counsel. We interpret counsel to mean not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render *and rendering* reasonably effective assistance.'

"In United States v. Wight, 176 F.2d 376 (C.A. 2), cert. denied, 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed.

586, it was said that the rule contemplates the conscientious service of competent counsel and that a mere perfunctory appearance for a defendant is not enough. To like effect is Turner v. State of Maryland, 303 F.2d 507 (C.A. 4).

"It is held that invalidation of a conviction on allegations of ineffective counsel is not warranted by contentions as to the 'competence of counsel' without more, Kennedy v. United States, 259 F.2d 883, 886 (C.A. 5), cert. denied, 359 U.S. 994, 79 S.Ct. 1126, 3 L.Ed.2d 982; the 'quality of a defense' or matters of 'counsel's judgment,'" Lyons v. United States, 325 F.2d 370, 376-377 (C.A. 9), cert. denied, 377 U.S. 969, 84 S.Ct. 1650, 12 L.Ed.2d 738; United States ex rel. Feeley v. Ragen, 166 F.2d 976 (C.A. 7); 'general statements expressing dissatisfaction with trial results,' Frand v. United States, 289 F.2d 693, 694 (C.A. 10); 'a matter of trial strategy' McDonald v. United States, 282 F.2d 737, 740, 743 (C.A. 9); or when petitioner has alleged no grounds for a defense, Turner v. Maryland, 318 F.2d 852 (C.A. 4)."

And in Williams v. Beto, 354 F.2d 698 (5 Cir. 1966), it is said:

"This is a good time to make it plain, however, that when a defendant requests the appointment of counsel he is simply seeking the benefits of the attorney-client relationship as customarily practiced in the American system of jurisprudence, no more and no less. Lawyers are not required to be infallible. If they were, law practice would soon totally disappear. MacKenna v. Ellis, (5 Cir., 1960), 280 F.2d 592, mod. 289 F.2d

928, cert. den. 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78. Courts themselves are often thought to err, for which they are reversed by higher tribunals.

"The ability and faithfulness of an attorney is not to be judged by whether he won or lost the verdict, De-Roche v. United States, (9 Cir., 1964), 337 F.2d 606; Holt v. United States, (8 Cir., 1962), 303 F.2d 791, cert. den. 372 U.S. 970, 83 S.Ct. 1095, 10 L.Ed. 2d 132; Kilgore v. United States, (8 Cir., 1963), 323 F.2d 369, cert. den. 376 U.S. 922, 84 S.Ct. 681, 11 L.Ed.2d 617. Pineda v. Bailey, supra [5 Cir., 340 F.2d 162]. If losing the case were proof of incompetency or infidelity, the professional career of the most vigorous attorneys would be of relatively short duration. A lawyer cannot be expected to win a hopeless case, although it may occasionally happen. Hopeless cases may always be won in the fictionalized fancy of the TV screen, but the hard facts of the real courtroom are very much to the contrary.

"When one seeks the assistance of counsel, he thereby confesses his own inadequacy in the field and stipulates his willingness, like any other client, save in the exceptional case we have already discussed, to be bound by the presumably superior knowledge of the professional man on whose assistance he proposes to depend.

"He agrees that this attorney will be in charge of his defense in the legal battle about to begin. He should know that in the course of a lawsuit there are many critical Rubicons at which the attorney must make finely balanced, often agonizing, decisions. A legal situation frequently presents choices in many directions. Unfortunately for him, the lawyer has to de-

cide, he realizes events may prove his decision not the best, but the merits of the decision are not altogether capable of ascertainment merely by consulting the outcome. Taylor v. United States, (8 Cir., 1960), 282 F.2d 16.

"If the indigent client, conferred upon and trusted to the lawyer, knows more about what ought to be done in handling the case, then he needs no counsel and it is folly for him to ask for it. Moreover, the fact that some other lawyer followed a different course in another case, or would have done differently had he been acting as counsel, is no ground for branding the appointed attorney with the opprobrium of ineffectiveness, or infidelity, or incompetency. The practice of law is an art as well as a science. As no two men can be exactly alike in the practice of the profession, it is basically unreasonable to judge an attorney by what another would have done, or says he would have done, in the better light of hindsight. Scott v. United States, (6 Cir., 1964), 334 F.2d 72, cert, den. 379 U.S. 842, 85 S.Ct. 81, 13 L.Ed.2d 48.

"Court appointed counsel is no different to any other lawyer. He is still a lawyer, he is still practicing law, and he is no less confronted by difficult decisions of tactics and strategy. He cannot stand still and do nothing. That indeed might be the best evidence of incompetency, or infidelity, or ineffectiveness, or all three. He must decide as his knowledge, experience, and talents best permit, and then move ahead. When he does this, that is all any lawyer can do, and the client has no right to complain of the absence of a miracle. Hickock v. Crouse, (10 Cir., 1964), 334 F.2d 95,

cert. den. 379 U.S. 982, 85 S.Ct. 689, 13 L.Ed.2d 572, and Smith v. Crouse, 379 U.S. 982, 85 S.Ct. 690, 13 L.Ed.2d 572, reh. den. two cases, 380 U.S. 928, 85 S.Ct. 908, 13 L.Ed.2d 817.

"It is the duty of every court, state or federal, fearlessly to see that the attorney is faithful to his trust. Courts will not shirk this duty. On the other hand, we must have no qualms about rejecting the ill founded contentions of those who have enjoyed the services of court appointed counsel only to seek, without just cause, to discredit their benefactors."

▆ The law is settled that a reasonable time must be allowed a defendant and his counsel to prepare for trial, and each case must stand on its own facts in the determination of what is a reasonable time to prepare a defense. As we said in State ex rel. Lawrence v. Henderson, supra:

"* * * It is common knowledge in the legal profession, attested by the experience of every trial lawyer, that the time necessary and sufficient for pre-trial preparation essential to effective representation of an accused is determined by the varying circumstances of each case. Some cases require less pre-trial investigation and preparation than others. For these reasons it is impossible to establish or fix a definite period of time that an attorney representing an accused person should devote to pre-trial preparation of the case."

In each such case it is a question of protecting the constitutional right of the defendant to representation by counsel without unreasonable restriction. State ex rel.

Callahan v. Henderson, 220 Tenn. 417, 417 S.W. 2d 789; Johnson v. State, 213 Tenn. 55, 372 S.W.2d 192; Bass v. State, 191 Tenn. 259, 231 S.W.2d 707; Fields v. Peyton, 375 F.2d 624, 628 (4th Cir. 1967). In this case the petitioner's court-appointed counsel had seventeen days in which to prepare for trial. In our judgment the record abundantly demonstrates that he used his time well and effectively and applied himself assiduously to the petitioner's defense, and does not show that the petitioner was denied any right or that he suffered any prejudice by being tried seventeen days after the return of the indictment.

■ ■ The question raised by the petitioner regarding the refusal of the trial judge to change the venue is foreclosed. The Supreme Court adjudicated that question. In its opinion affirming the petitioner's conviction the Court said:

"Assignments are directed to alleged error of the trial court in overruling a motion for change of venue. The record contains the examination of all of the jurors and we think the trial judge rightly found that these jurors were competent and unprejudiced. Indeed, it does not appear that the defendant exhausted all of his peremptory challenges. The testimony introduced does show that there was some excitement in the County, but the substance of it is that the conditions did not preclude a fair trial in that County at that time. Moreover, reviewing the record, which is substantially as above set forth, we think no other jury in any other jurisdiction would have reached a different verdict."

In State ex rel. Brown v. Newell, 216 Tenn. 284, 391 S.W.2d 667, our Supreme Court said:

"It is axiomatic that we may take judicial notice of facts in an earlier proceeding of the same case and our final action thereon. Likewise, we may look to the record of petitioner's direct appeal to this Court from his original conviction and judgment. State ex rel. Wilkerson v. Bomar, 213 Tenn. 499, 376 S.W.2d 451 (1963)."

It is fundamental that habeas corpus may not be employed to raise and relitigate or review questions decided and disposed of in a direct appeal from a conviction. State ex rel. Brown v. Newell, 216 Tenn. 284, 391 S.W.2d 667; Spaulding v. Taylor, 336 F.2d 192 (10th Cir. 1964). This follows inevitably as a necessary corollary of the deeply rooted and established principle that habeas corpus is not available as a substitute for or to serve the purpose of appeal or writ of error. State ex rel. Dawson v. Bomar, 209 Tenn. 567, 354 S.W.2d 763, cert. den. 370 U.S. 962, 82 S.Ct. 1620, 8 L.Ed.2d 829; State ex rel. Potter v. Bomar, 209 Tenn. 577, 354 S.W.2d 767; State ex rel. Holbrook v. Bomar, 211 Tenn. 243, 364 S.W.2d 887; State ex rel. Smith v. Bomar, 212 Tenn. 149, 368 S.W.2d 748, cert. den. 376 U.S. 915, 84 S.Ct. 670, 11 L.Ed.2d 612; State ex rel. Ivey v. Meadows, 216 Tenn. 678, 393 S.W.2d 744; State ex rel. Brown v. Newell, supra; State ex rel. Newsom v. Henderson, 221 Tenn. 24, 424 S.W.2d 186. The same principle of law precludes the petitioner from questioning now the sufficiency of the evidence to sustain his original conviction. That question was considered and

set at rest by the Supreme Court in affirming his conviction.

Moreover, it is fundamental that the writ of habeas corpus may not be employed to test the sufficiency of the evidence at the original trial. It is no longer open to question that insufficiency of trial evidence and incompetency of witnesses are not matters reviewable by post-conviction proceedings. 39 C.J.S. Habeas Corpus § 29j, p. 518; Fernandez v. Klinger, 346 F.2d 210 (9th Cir. 1965), cert. den. 382 U.S. 895, 86 S. Ct. 191, 15 L.Ed.2d 152. And the law is settled that habeas corpus may not be employed to determine the question of guilt or innocence. State ex rel. Brown v. Newell, 216 Tenn. 284, 391 S.W.2d 667; State ex rel. Dickens v. Bomar, 214 Tenn. 493, 381 S.W.2d 287.

The burden of proving his allegations that his conviction and sentence are void was on the petitioner. State ex rel. Kuntz v. Bomar, 214 Tenn. 500, 381 S.W. 2d 290; State ex rel. George v. Bomar, 216 Tenn. 82, 390 S.W.2d 232. He has not carried that burden.

The judgment of the trial court is affirmed.

This case was heard and submitted to the Court prior to enactment of Chapter 330 of the Public Acts of 1969 increasing the membership of the Court.

Judge GALBREATH did not participate in the decision of this case.

WALKER, P. J., concur.