**Richard L. WAGGONER, Plaintiff-in-Error,**

**v.**

**STATE of Tennessee, Defendant-in-Error.**

Court of Criminal Appeals of Tennessee.

Jan. 30, 1974.

Certiorari Denied by Supreme Court
May 20, 1974.

Joe P. Brinkley, Sr., and Arnold Peebles, Jr., Nashville, for plaintiff in error.

David M. Pack, Atty. Gen., Alex B. Shipley, Jr., Asst. Atty. Gen., Carl Douglas Thoresen, Asst. Dist. Atty. Gen., Nashville, for defendant in error.

OLIVER, Judge.

## OPINION

Represented in this proceeding by retained counsel, Richard L. Waggoner, an inmate of the State Penitentiary where he is serving a sentence of 20 years for the offense of kidnapping for the purpose of committing robbery (TCA § 39–2603), adjudged by the Davidson County Criminal Court September 23, 1971 upon his written plea of guilty and written waiver of appeal signed by him and one of his retained trial attorneys, appeals to this Court from the judgment of that court dismissing his post-conviction petition after an evidentiary hearing.

Notwithstanding the express provision of TCA § 39–2603 that penitentiary imprisonment for violation thereof shall be "without possibility of parole," the jury empan-

eled to assess Waggoner's punishment fixed it at 20 years in the penitentiary and also, upon the recommendation of the State and the instruction of the court that "That's a matter that addresses itself to your discretion," recommended that he be considered for parole. The court pronounced judgment accordingly. All of this appears in the transcript of the original trial, introduced as an exhibit during the evidentiary hearing upon this petition.

Waggoner charges in his post-conviction petition that his plea of guilty was not made freely, voluntarily and knowledgeably and was a result of a promise of reward made to him by his counsel and the State, that he was not advised of the "ultimate consequences" of his plea, and that the jury's verdict was void because the prosecution and the trial court submitted "improper and illegal considerations" before the jury. Despite the plainly conclusory nature of these allegations, out of an abundance of caution the trial judge granted Waggoner an evidentiary hearing and, upon consideration of all the proof introduced, found that he knowingly, understandingly and intelligently entered a plea of guilty and that he was adequately represented by his retained counsel, and that no "State-action" was involved.

Testifying in his own behalf in the evidentiary hearing, Waggoner admitted he understood he was pleading guilty, waiving his right to appeal, and would be sentenced to imprisonment in the penitentiary for 20 years; that no promises or threats were made to him; and that during the trial he told the trial court that he pleaded guilty knowingly, willingly and intelligently, and that the facts stated before the court and jury by the State's witnesses (the robbery victim and his wife and the arresting officer) were true, and that he had no questions. The transcript of the record of the trial, admitted and identified and authenticated by the court as an exhibit in the evigation of Waggoner and his answers after dentiary hearing, shows the court's interro-

the State concluded presentation of its proof.

Waggoner testified in the hearing on this petition, however, that he did not ask the trial court any questions because he was in a state of shock; that he did not know what he was doing, and that he was scared when he pleaded guilty; that his retained trial attorney, Smith, only discussed the case with him for two and a half hours, and that his other attorney, Mr. Allen, discussed it with him for about an hour; that Allen indicated he wanted to look into the case further; that the guilty plea was discussed with him for about 20 minutes the day of the trial and that he had not expected to plead guilty; that he does not now understand the meaning of a sentence of 20 years with the possibility of parole recommended by the jury—what that meant insofar as executive matters were concerned; that it was never made clear to him that the judicial branch of the government has no control over the executive, and does not know how much time he will have to serve under this sentence; that the range of punishment discussed with him was between 50 years and the death penalty; that his attorneys explained to him that if he pleaded guilty he would be sentenced to 20 years in prison, and explained the forms in which he pleaded guilty and waived his right of appeal, but he did not read them; that when he was first indicted Attorney Smith told him he would probably be given a suspended sentence of three years; that he had been told his codefendants received sentences of only 10 years because he was the leader of the criminal enterprise; that at the time of the offense he was 20 years old, had finished the 12th grade in school, and was qualified in the Army as an ear, nose, and throat specialist; and that he had never been in any trouble before.

The exhibited transcript of the trial proceedings shows that Waggoner's co-defendants, French and Ingram, were both charged with and pleaded guilty to assaulting the robbery victim's wife with intent to rape her and were sentenced to imprisonment in the penitentiary for not less than 10 nor more than 20 years. TCA § 39–605.

Attorney Thomas O. H. Smith, Sr. testified that he and Attorney E. Lee Allen were retained to represent Waggoner; that a day or two before the trial date the prosecution made an offer; that based on what the defendant had told him he advised him to plead guilty; that he explained to him the charge in the indictment, his right to a jury trial and his right to waive the same; that no promises were made to him and he was not forced or coerced to plead guilty; that he did not interview the police or the prosecuting witnesses, but learned the co-defendant Ingram's version of the incident from juvenile court files and talked with co-defendant French; that Waggoner admitted to him about telling the victims to get into the car but denied the robbery; that he acted more like the incident was a prank and indicated he and his companions had been drinking; and that he would have tried the case if the defendant had wanted a trial.

Attorney E. Lee Allen testified that Waggoner's mother contacted him, told him that Attorney Smith was considering having Waggoner plead guilty but she did not believe her son was guilty, and asked him to look into the matter; that he talked with Attorney Smith, and from his discussion with the defendant and his mother he thought the case was going to be tried; that two days before the scheduled trial date he received a letter from Attorney Smith asking him to interview witnesses but he did not have time to do so; that he was present when a settlement offer was proposed to Waggoner, but he left inasmuch as Attorney Smith was leading counsel; that Waggoner was told that upon a plea of guilty to kidnapping he would receive a sentence of 20 years, and that he had a right to plead not guilty.

Waggoner's Assignments of Error here challenge the trial judge's findings and dis-

missal of his petition. In considering this Assignment, we are bound to adhere to the settled rule that the findings of the trial court, upon questions of fact, are conclusive unless this Court finds that the evidence preponderates against the lower court's judgment. State ex rel. Lawrence v. Henderson, 1 Tenn.Cr.App. 199, 433 S. W.2d 96; State ex rel. Jennings v. Henderson, 1 Tenn.Cr.App. 438, 443 S.W.2d 835; State ex rel. Leighton v. Henderson, 1 Tenn.Cr.App. 598, 448 S.W.2d 82; Myers v. State, 3 Tenn.Cr.App. 414, 462 S.W.2d 265; Parker v. Russell, 2 Tenn.Cr.App. 130, 451 S.W.2d 722; Bratton v. State, Tenn.Cr.App., 477 S.W.2d 754.

The law is also settled in this State that the findings of a trial judge in an oral hearing, who sees and hears the witnesses testify, and hears and considers conflicting testimony and evidence, will be given the weight of a jury verdict. Bratton v. State, supra; Taylor v. State, 180 Tenn. 62, 171 S.W.2d 403; Atlas Powder Co. v. Leister, 197 Tenn. 491, 274 S.W.2d 364.

■ The petitioner assumed the burden of proving his allegations attacking the validity of his conviction. Bratton v. State, supra; State ex rel. Lawrence v. Henderson, supra; Morgan v. State, 1 Tenn.Cr. App. 454, 445 S.W.2d 477; Shepard v. Henderson, 1 Tenn.Cr.App. 694, 449 S.W. 2d 726; State ex rel. Carroll v. Henderson, 1 Tenn.Cr.App. 427, 443 S.W.2d 689; Parker v. Russell, supra.

■ The settled law is that a guilty plea is not rendered involuntary by the fact that the accused is faced with an election between a possible death sentence on a plea of not guilty and a lesser sentence upon a guilty plea. Shepard v. Henderson, supra; State ex rel. Wyatt v. Henderson, 2 Tenn. Cr.App. 288, 453 S.W.2d 434; Adams v. State, Tenn.Cr.App., 467 S.W.2d 841; Beaty v. Neil, Tenn.Cr.App., 467 S.W.2d 844; Bratton v. State, supra; Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785; Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747.

■ In an analogous case, State ex rel. Richmond v. Henderson, 222 Tenn. 597, 439 S.W.2d 263, the Court held that an allegation in a habeas corpus petition that the petitioner's guilty plea was induced by improper advice of retained counsel did not state facts constituting denial of due process by ineffective representation and presented no ground for invalidating the conviction. The Court said:

"Petitioner's rights, if any, flow from the federal constitutionally guaranteed right to counsel. Avery v. Alabama, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1940). So, while an allegation of affirmative misconduct superficially excites more judicial interest and investigation, still, the question remains whether under the facts there has been a denial of federal due process by ineffective representation; representation of the kind resulting in a void judgment.

"The standard applied by the overwhelming majority of federal courts in considering this question is stated as follows:

'Incompetency of counsel such as to be a denial of due process and effective representation by counsel must be such as to make the trial a farce, sham, or mockery of justice.'

\*   \*   \*   \*   \*   \*

"This rule has been applied to any number of situations arising in a criminal case, including that situation involving the advice or urging of defense counsel for the defendant to enter a plea of guilty. In cases in which this exercise of judgment by counsel (that of urging a defendant to enter a plea of guilty) has been attacked, it has uniformly been held that this is not a ground for invalidating the judgment."

The Court quoted with approval from United States of America ex rel. Wilkins v. Banmiller, Warden, State Correctional Institution, Philadelphia, Pennsylvania, 205 F.Supp. 123 (D.C.1962), as follows: "However, intervention by this court re-

quires that the denial of relator's rights be the doing of the state. There is no indication here that the state participated in any such denial, and the writ must be denied," and then the Court added:

"This is also the rule in the Sixth Circuit. In Davis v. Bomar, 344 F.2d 84, C.C.A.6, 1965, that court said:

'When counsel is retained by defendant to represent him in a criminal case he acts in no sense as an officer of the state.'

"In the light of these authorities the allegations in the habeas corpus petition presented no grounds for voiding the judgments entered on the pleas of guilty."

Affirmed.

MITCHELL, J., concurs.

RUSSELL, J., separately concurring.

RUSSELL, Judge (separately concurring).

I do not think that it was necessary for the trial judge to hold, once he found that counsel's representation was legally adequate, that no State action was involved; nor can I subscribe to that part of our opinion that seems to say that a counsel deprivation cannot ever occur where counsel is retained. See Skinner v. State, Tenn.Cr.App., 472 S.W.2d 903. The United States Supreme Court has addressed the question of a possible right-to-counsel deprivation by retained counsel without even discussing as a factor the matter of retention rather than representation by appointment. Dukes v. Warden, 406 U.S. 250, 92 S.Ct. 1551, 32 L.Ed.2d 45 (1972). The following statement appears in 74 A.L.R.2d at page 1397: "While there seemingly has been up to this time no direct pronouncement by the United States Supreme Court * * * the general rules * * * are, basically, that the incompetency (or one of its many synonyms) of private counsel

* * * is neither a denial of due process * * * nor an infringement of the right to * * * counsel * * * unless the attorney's representation is so lacking that the trial has become a farce and a mockery of justice, in which case the judgment * * * is void."

This question has been dealt with by lower federal courts. In the case of Perry Lee Taylor v. Robert Moore, Warden, Civil Action No. 6517, filed December 12, 1972, in the United States District Court for the Eastern District of Tennessee, Southern Division, this language is found:

"Although the respondent, citing state authority, contends that since the petitioner's legal counsel was privately retained there could be no denial of effective assistance of counsel as no state action is involved, it is clear that denial of effective assistance of counsel can exist even where legal counsel is retained. Woodall v. Neil, 444 F.2d 92 (C.A.6, 1971); Goodwin v. Cardwell, 432 F.2d 521 (C.A.6, 1970); United States ex rel. Smith v. McMann, 417 F.2d 648 (C.A.2, 1969), cert. den. 397 U.S. 925 [90 S.Ct. 929, 25 L.Ed.2d 105] (1970).

As far back as 1944 we find the U.S. Sixth Circuit Court of Appeals, in the case of Tompsett v. Ohio, 146 F.2d 95, saying:

"[3] The foregoing rule has no application where it is made to appear that the defendant is ignorant of his rights and unacquainted with the course of proceedings in criminal cases. In that event if the attorney selected by such a defendant is so incompetent or dishonest or so improperly conducts defendant's case as to amount to practically no representation, the defendant is prejudiced and thereby deprived of a fair trial and a court should grant relief by use of the writ of habeas corpus. * * *"

In Craig v. United Sates, 217 F.2d 355 (C.A.6, 1954) the court said:

" * * * It is immaterial whether such counsel was appointed by the Court

or selected by the accused, in the absence of facts constituting a waiver of the right. (Citing cases.) The prejudice to a defendant from the failure to have the effective assistance of counsel results whether counsel is court appointed or selected by the accused. * * * "

I do not believe that it is wise for us to adhere to a State rule on a federal constitutional question that is so obviously at odds with the federal interpretation. While technically we may only be bound by what the U.S. Supreme Court says, it is hardly reasonable to ignore the lower federal courts, who unquestionably have the power to grant relief from our contrary adjudications.

I otherwise concur.