IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
May 1, 2018 Session

## MICHAEL DAVIS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 12-00037     James M. Lammey, Judge

_____

**No. W2017-01592-CCA-R3-PC**
_____

Petitioner, Michael Davis, appeals the denial of his petition for post-conviction relief from his conviction for second degree murder. On appeal, Petitioner argues that he was denied due process of law when the post-conviction court refused to grant Petitioner a continuance to present an expert witness and failed to address all of the issues presented in its written order. Additionally, Petitioner claims that he received ineffective assistance of counsel. After thorough review, we determine that Petitioner was afforded due process and received effective assistance of counsel. Thus, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ALAN E. GLENN and J. ROSS DYER, JJ., joined.

Terrell L. Tooten, Cordova, Tennessee, for the appellant, Michael Davis.

Herbert H. Slatery III, Attorney General and Reporter; Robert W. Wilson, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Gavin Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Petitioner fatally shot the victim, Lataska Applewhite, in her home on November 29, 2011. *State v. Michael Davis* (*Davis I*), No. W2013-01122-CCA-R3-CD, 2014 WL 1258844, at *1 (Tenn. Crim. App. Mar. 26, 2014), *perm. app. denied* (Tenn. Aug. 26 2014). As a result, the Shelby County Grand Jury indicted Petitioner for second degree murder, and the trial court conducted a jury trial in February 2013. *Id.* A jury convicted

Petitioner as charged, and this Court upheld the jury verdict on direct appeal. *Id.* at *9. During and after an unsuccessful attempt to receive error coram nobis relief, *see State v. Michael Davis* (*Davis II*), No. W2015-00227-CCA-R3-ECN, 2016 WL 193568, at *1 (Tenn. Crim. App. Jan. 14, 2016), *no perm. app. filed*, Petitioner sought post-conviction relief. In his pro se post-conviction petition, Petitioner alleged seven grounds for relief, including ineffective assistance of counsel. Under the umbrella of ineffective assistance of counsel, Petitioner alleged twenty-six individual deficiencies of trial counsel. In Petitioner's first amended petition, which incorporated by reference Petitioner's pro se petition, the list of deficiencies expressly mentioned was narrowed to eight. Though they are not numbered or individually listed, Petitioner's second amended petition contains seven alleged deficiencies of trial counsel and incorporates the previous two petitions. At the multiple post-conviction hearings, the following facts were adduced.

In preparation for trial, Petitioner and trial counsel engaged in a process that involved "conversation," "posturing," and "editing." Trial counsel recalled agreeing that the best course of action was to pursue a theory that the victim was the first aggressor. Petitioner claimed that he explained to trial counsel that he did not really understand the situation he had been in with the victim until he underwent a drug and domestic violence program at the county jail. Petitioner recognized that the victim had been his "abuser" when the counselor in the domestic violence program explained the patterns of an abusive person. At that point, Petitioner recalled experiencing abusive patterns from the victim such as isolation and spontaneous bursts of violence. Based on this revelation, Petitioner wanted to pursue a defense strategy that presented Petitioner as a victim of domestic violence. Petitioner said that trial counsel and co-counsel were "more or less dismissive" of his idea. Petitioner said that trial counsel was "subtle with" the domestic violence theory.

At trial, some witnesses testified to the victim's propensity for violence, but Petitioner maintained that they did not speak specifically about domestic violence, which is the subset of violence on which he desired more evidence. Trial counsel listed six individuals who knew that Petitioner had been a victim of domestic violence at the hands of the victim. However, trial counsel only called four of those six witnesses. He did not call two of the witnesses because he believed that one of the witness's testimony would be hearsay and duplicative of the testimony of Petitioner and the other witness would likely not testify because his testimony would be self-incriminating.

Trial counsel recalled Petitioner wanting a domestic violence expert, but trial counsel did not think one would be necessary in light of the other witnesses that would be testifying to the victim's violent tendencies. Trial counsel's theory was that "[the victim] came at [Petitioner] with a gun [and] when he tried to take it away from her, . . . it went off." Trial counsel believed that the victim's violent tendencies in the past aligned with

Petitioner's theory that she was the first aggressor. Trial counsel did not believe that an expert would add anything to the case that was not already obvious. According to trial counsel, Petitioner was obviously a domestic violence victim.

When describing the evidence that led trial counsel to think that a domestic violence expert was not needed, trial counsel stated:

I want to say there was at least three different occasions that she shot at him and then another occasion where I looked up her record and found that she was convicted of aggravated assault, found the victim of that aggravated assault and had her come in and testify that [the victim] had broke[n] into her house and stabbed her in the head.

According to trial counsel, all of that evidence went on the record in front of the jury. Trial counsel did not believe that calling a domestic violence expert would have yielded a different outcome from the trial.

In the course of the trial, trial counsel elicited testimony from Dr. Miguel Laboy regarding the amount of cocaine and marijuana in the victim's system. However, Petitioner contended that trial counsel did not adequately relate the drug use to the victim's alleged violence against Petitioner. When it came to the victim's drug use, trial counsel testified that he chose to avoid the mention of drugs as much as possible because he was concerned that Petitioner would lose his credibility if he disputed the testimony of the other witnesses regarding an alleged drug sale by Petitioner. Trial counsel "worried about . . . [Petitioner] saying this did not happen while two other people were saying this did happen and then the jury tak[ing] him to be a liar."

Petitioner testified at trial that the victim was holding the gun in her left hand. Marvis Applewhite, the victim's mother, was called as a rebuttal witness and testified that the victim was right handed. According to Petitioner, while there was testimony at trial that would have indicated that the victim was actually left handed, none of that evidence was "pointed out or presented to the jurors." Trial counsel remembered a discussion about Ms. Applewhite being called as a rebuttal witness, and trial counsel was not certain, but he believed that this discussion took place after he approached the bench and made his objection.[1] During that discussion, the State said the purpose of recalling Ms. Applewhite was to establish whether the victim was right or left handed. Ultimately, the trial court allowed it.

---

[1] A review of the trial transcripts included in the direct appeal record contains no record of an objection to Ms. Marvis Applewhite's testimony as a rebuttal witness.

Petitioner claimed that Shaquille Sugars, the victim's son, should have been called as a witness. Trial counsel admitted he never attempted to locate Shaquille Sugars because some research on Facebook led trial counsel to a page where one of the victim's children discussed hunting down and killing Petitioner. When speaking of why he did not call any of the victim's children as a witness, trial counsel said:

> I didn't think they would be cooperative towards us. I didn't know where they were and I certainly wasn't going to call one of them as a witness at trial with never having talked to them before trial. Now did I make an attempt to talk to them? No, I didn't. Because of what I saw on Facebook, I did not think they would be cooperative.

Despite having the juvenile records for the victim's entire family, trial counsel heard for the first time at Petitioner's error coram nobis hearing that the victim had previously pulled a gun on her children.

The transcript of Mr. Sugars's testimony from the error coram nobis hearing, which was entered as an exhibit at the post-conviction hearing, revealed that Mr. Sugars was aware that the victim had a drug problem and would become abusive and aggressive when things did not go her way. Mr. Sugars recalled the victim possessing guns and pointing guns at her boyfriends during fights. Mr. Sugars also recounted multiples times when the victim pointed a loaded gun at him and his brother. Additionally, Mr. Sugars remembered a time when the victim put her hand in Petitioner's face and said that she would hurt him and shoot him if she caught him with another woman.

In addition to all of the testimony that Petitioner wanted regarding the victim as the first aggressor, Petitioner also faulted trial counsel for not introducing phone records that Petitioner claimed would have shown that he was asleep at the time of the crime. Trial counsel had Petitioner's phone records and recalled a stipulation regarding the admission of various calls in the records. However, he did not recall entering a record of any missed phone calls for the purpose of illustrating that Petitioner was asleep at the time of the crime. Trial counsel reasoned that those phone records would not have been needed because another witness would say that he understood Petitioner to be asleep around that time. Trial counsel admitted that there would have been no harm in entering the phone records to show that Petitioner was asleep, but trial counsel saw no need to do so because he thought the testimony of Petitioner and another witness would be enough to establish that Petitioner was asleep. Trial counsel opined that the records of the missed phone calls would have made the case "one-one millionth of a percent stronger." Trial counsel recalled extensively discussing the phone records with Petitioner, but he did not recall asking Petitioner about the admission of any specific phone calls or missed phone calls from the records.

At the end of the third post-conviction hearing, Petitioner expressed that he would like to call a domestic violence expert. The post-conviction court responded, "Why aren't they here now?" The post-conviction court continued responding to post-conviction counsel by saying, "[W]e're going on a year since you were on [this post-conviction case], almost." The post-conviction court maintained that if Petitioner wanted an expert witness, then the expert witness should have been called at one of the three post-conviction hearings. The trial court then continued the case to another date for argument because everyone was not prepared for argument.

The post-conviction court's written order denying post-conviction relief does not expressly mention every ground raised in the petition.[2] Of the more than twenty issues enumerated in Petitioner's three petitions, only eight issues are addressed in the post-conviction court's order. Relevant to this appeal, the post-conviction court determined in a general nature that trial counsel "investigated the case to find necessary witnesses that would aid in Petitioner's case" and concluded that Petitioner had failed to show by clear and convincing evidence that trial counsel had failed to properly investigate the case. The post-conviction court also accredited the testimony of trial counsel as it pertained to his objection to the testimony of Ms. Applewhite and concluded that Petitioner had failed to prove that trial counsel failed to make an objection to the State's presentation of Ms. Applewhite as a rebuttal witness. While addressing an issue not subject to this appeal, the post-conviction court mentions trial counsel's failure to call a domestic violence expert. The post-conviction court recounts the testimony that trial counsel felt a domestic violence expert would not have added any new information and that trial counsel had no indication that a mental evaluation was necessary, but the post-conviction court does not make a specific conclusion with regard to whether trial counsel was deficient for failing to call a domestic violence expert. Ultimately, the post-conviction court concluded that Petitioner did not prove that he received ineffective assistance of counsel. Petitioner now appeals from this order denying relief.

*Analysis*

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his or her factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18

---

[2] Petitioner points out a misstatement of fact in the post-conviction court's order. The written order assumes with no evidentiary basis that Mr. Sugars authored the Facebook post referring to Petitioner when the evidence only states that one of the victim's children authored the post. We view this misstatement as inconsequential.

S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, a post-conviction court's findings of fact are conclusive unless the evidence preponderates otherwise. *Vaughn v. State*, 202 S.W.3d 106, 115 (Tenn. 2006). Accordingly, questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court, and an appellate court may not substitute its own inferences for those drawn by the post-conviction court. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001). However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

## I. Due Process

Petitioner alleges that he was denied due process when the post-conviction court would not allow the presentation of a domestic violence expert at the post-conviction hearing and did not address all of the issues alleged in the petition for post-conviction relief. The State responds that the trial court did not abuse its discretion when it denied Petitioner's request for a continuance to call an expert witness and that the post-conviction court's failure to address all of the issues in its written order does not mandate reversal. We agree with the State.

### A. Presentation of a Domestic Violence Expert

If a post-conviction court does not summarily dismiss a petition for post-conviction relief, then it must hold an evidentiary hearing. T.C.A. § 40-30-109. It is the petitioner's burden to prove his allegations by clear and convincing evidence, and thus, it is obvious that the petitioner is entitled to a full and fair hearing. *See Corey Mitchell v. State*, No. W2016-01818-CCA-R3-PC, 2018 WL 3005379, at *5 (Tenn. Crim. App. June 19, 2018) (citing T.C.A. § 40-30-110(f)), *no perm. app. filed*. Due process entails the opportunity to be heard "at a meaningful time and a meaningful manner." *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). However, the requirement of a "full and fair hearing" is satisfied when "a petitioner is given the opportunity to present proof and argument on the petition for post-conviction relief." *Id.* (citing *House v. State*, 911 S.W.2d 705, 714 (Tenn. 1995)). Once a hearing has begun, a petitioner's due process rights are not violated by the post-conviction court's denial of a continuance unless it appears that the post-conviction court abused its discretion and, thereby, affected the fairness or the outcome of the proceeding. *See State v. Odom*, 137 S.W.3d 572, 589 (Tenn. 2004). An abuse of discretion occurs when a court applies incorrect legal standards, reaches an illogical conclusion, bases its decision on a clearly erroneous

assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *State v. Hester*, 324 S.W.3d 1, 35 (Tenn. 2010).

There were four hearings conducted on the petition for post-conviction relief in this case, the first three of which included the presentation of testimony and evidence and the fourth being limited to argument. Petitioner could have called a domestic violence expert at any of the first three hearings of his choosing. However, he chose not to. Only at the conclusion of the third hearing did Petitioner request a continuance to call a domestic violence expert. The post-conviction court denied that request, noting that the Petitioner had had plenty of opportunities at the prior hearings over the course of almost a year to call such a witness. After giving Petitioner three opportunities to present his proof, the post-conviction court did not abuse its discretion in denying Petitioner another continuance for the purpose of calling an expert witness and did not violate Petitioner's due process rights by refusing to give Petitioner another opportunity.

## B. *Failure of the Post-Conviction Court to Address All Issues in the Petition*

Petitioner argues on appeal that the post-conviction court overlooked or failed to fully analyze the issues of trial counsel's failure to call a domestic violence expert, trial counsel's failure to introduce Petitioner's phone records, or trial counsel's failure to argue that the victim's cocaine addiction made her aggressive. Generally, a post-conviction court is required to "enter a final order," "set forth in the order or a written memorandum of the case all grounds presented," and "state the findings of fact and conclusions of law with regard to each ground." T.C.A. § 40-30-111(b). While this requirement has been construed as mandatory, a post-conviction court's failure to follow this requirement does not necessitate reversal. *State v. Swanson*, 680 S.W.2d 487, 489 (Tenn. Crim. App. 1984). The legislature intended this requirement to facilitate appellate review of the lower court's proceedings, and "the failure to meet the requirement neither constitutes constitutional abridgement nor renders the conviction or sentence of the appellant void or voidable." *Id.* The post-conviction court's findings on related ineffective assistance of counsel issues and its general denial of the petition provide this Court with insight regarding the post-conviction court's conclusions and a foundation for appellate review. Because we are not required to remand this case for a more thorough order, we will review the substance of Petitioner's claims.

## II. *Ineffective Assistance of Counsel*

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. *See Davidson v. State*, 453 S.W.3d 386, 392-93 (Tenn. 2014). In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate

that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel applied in federal cases also applies in Tennessee). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). This Court will not use hindsight to second-guess a reasonable trial strategy, even if a different procedure or strategy might have produced a different result. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). However, this deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the *Strickland* test in order to obtain relief. The question is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A petitioner must show that there is a reasonable probability "sufficient to undermine confidence in the outcome" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* (quoting *Strickland*, 466 U.S. at 691).

*A. Evidence of the Victim's Cocaine Addiction*

- 8 -

Petitioner alleges that trial counsel was ineffective because he failed to "highlight" the victim's cocaine addiction for the jurors. The State contends that trial counsel's decision not to present evidence of the victim's drug addiction was a reasonable trial strategy.

Trial counsel stated that his reason for not introducing evidence of the victim's drug addiction was to avoid the implication that Petitioner was the victim's drug dealer and discussing Petitioner's drug dealing. Trial counsel was aware that Petitioner disputed a claim by another witness that Petitioner had made a drug deal subsequent to the crime that is the basis of this case. Trial counsel wanted to avoid Petitioner disputing the credibility of another witness on the stand and, thereby, calling his own credibility into question. To us, this appears to be a reasonable trial strategy made after adequate preparation that we will not second guess. Trial counsel's preparation apprised him of a potential situation that would plausibly affect his client's credibility and he successfully navigated around that issue at trial. Trial counsel was not deficient in this regard.

## B. Failure to Call Shaquille Sugars

Petitioner claims that trial counsel was ineffective because he did not call Mr. Sugars to testify at trial. The State argues that trial counsel's decision not to call Mr. Sugars was objectively reasonable in light of the information he had at the time and that the failure to call Mr. Sugars did not prejudice Petitioner.

This Court has already reviewed the potential impact of Mr. Sugars's testimony on Petitioner's trial. *See Davis II*, 2016 WL 193568, at *10. On error coram nobis review, we reviewed Mr. Sugars's testimony to determine if its presentation to the jury "may have" resulted in a different judgment. *Id.* at *9. In that analysis, we could not "conclude that the jury would have reached a different verdict had Mr. Sugars . . . testified at the trial." *Id.* Here, we review Mr. Sugars's testimony to determine if it creates reasonable probability that the result of the proceeding would have been different. *See Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694). Given our prior holding regarding the same testimony, we conclude that Petitioner failed to prove prejudice.

## C. The Rebuttal Testimony of Ms. Applewhite

Petitioner alleges that trial counsel was ineffective because he failed to object to Ms. Applewhite's rebuttal testimony pursuant to Tennessee Rule of Evidence 615 after she had been in the courtroom throughout the proceedings. The State responds that Ms. Applewhite, as the victim's mother, was constitutionally entitled to remain in the courtroom pursuant to article 1, section 35 of the Tennessee Constitution, which provides

that victims are entitled to "[t]he right to be present at all proceedings where the defendant has the right to be present." Thus, according to the State, trial counsel was not ineffective for failure to object because any objection would have been futile.

In its written order, post-conviction court accredits trial counsel's testimony regarding the objection over that of the Petitioner and wrongly concludes that trial counsel objected to the rebuttal testimony of Ms. Applewhite. However, the trial transcript contained in the record provided to this Court on direct appeal[3] contains no indication that trial counsel objected to Ms. Applewhite's rebuttal testimony. We must conclude that the evidence preponderates against the trial court's finding of fact. However, since this Court conducts a de novo review of questions of law, we will consider the issue of whether trial counsel was deficient for failing to object.

Ms. Applewhite would be a "victim" in this case because she is a natural parent of the victim who is deceased. *See* T.C.A. § 40-38-302(3)-(4)(A)(iii)(a). As a victim, Ms. Applewhite had a right under the Tennessee Constitution to be at any proceeding that the defendant has a right to be present, which obviously includes the defendant's criminal trial. Tennessee Rule of Evidence 615, which may or may not have been invoked in this case, calls for the sequestration of all witnesses. However, the precise interplay between Tennessee Rule of Evidence 615 and Article 1, section 35 of the Tennessee Constitution has yet to be clarified by our courts. *See* Neil P. Cohen, Sarah Y. Sheppeard & Donald F. Paine, Tennessee Law of Evidence, § 6.15[5] (6th ed. 2011). Thus, even if Tennessee Rule of Evidence 615 was invoked, we cannot find that trial counsel performed deficiently by not objecting to the testimony of Ms. Applewhite.

### D. Domestic Violence Expert and Petitioner's Phone Records

Petitioner argues that trial counsel was ineffective for failure to call a domestic violence expert and failure to present Petitioner's phone records. However, Petitioner failed to present the testimony of a domestic violence expert at the post-conviction hearing and failed to produce the contents of Petitioner's phone records. A petitioner "bears the burden to produce any evidence at the post-conviction hearing for the court to be able to assess whether failure to present it at trial constitutes ineffective assistance of counsel." *Randall K. Madison v. State*, No. M2014-01942-CCA-R3-PC, 2015 WL 9488951, at *15 (Tenn. Crim. App. Dec. 29, 2015) (citing *Black v. State*, 794 S.W.2d 52, 757 (Tenn. Crim. App. 1990)), *no perm. app. filed*. Without testimony from a domestic violence expert, we have no idea what one might have concluded about Petitioner's

---

[3] We note that this Court can and does take judicial notice of the record of a petitioner's direct appeal to this Court. *McCracken v. State*, 529 S.W.2d 724, 726 (Tenn. Crim. App. 1975) (citing *State ex rel. Brown v. Newell*, 391 S.W.2d 667, 669 (Tenn. 1965); *Canupp v. State*, 460 S.W.2d 382, 383 (Tenn. Crim. App. 1970); *State ex rel. Leighton v. Henderson*, 448 S.W.2d 82, 83 (Tenn. Crim. App. 1969)).

situation or how such a conclusion may have affected the outcome of Petitioner's trial. Also, while trial counsel testified about the existence of Petitioner's phone records, no specific testimony about the phone calls was adduced, and the records themselves were not entered into evidence. Without more specific testimony or the introduction of the phone records as an exhibit, we cannot determine whether the existence of the alleged phone calls or the timing of the alleged phone calls would have had an impact on the outcome of the trial. Thus, Petitioner failed to show that he was prejudiced with regard to either alleged deficiency.

## *Conclusion*

For the aforementioned reasons, we affirm the judgment of the post-conviction court.

_____

TIMOTHY L. EASTER, JUDGE